Argued and submitted February 13, affirmed in part;
reversed in part and remanded September 8, 1981

UMREIN et al,
*Appellants - Cross-Respondents,*

*v.*

HEIMBIGNER et al,
*Respondents - Cross-Appellants.*

(No. 40-272, CA 17297)

632 P2d 1367

Ronald Allen Johnston, Portland, argued the cause for appellants - cross-respondents. With him on the briefs was Shannon and Johnson, Portland.

Michael G. Dowsett, City Attorney, Beaverton, argued the cause and filed the brief for respondents - cross- appellants.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

This proceeding was brought by plaintiffs pursuant to the Uniform Declaratory Judgments Act (ORS Chapter 28) and was treated by the trial court as an equitable proceeding. Plaintiffs sought a declaration that they were entitled to have certain initiative petitions filed, to attorney fees and to "other equitable relief." Plaintiffs obtained the declaratory relief sought, but were denied attorney fees. They appeal from that ruling. Defendants cross-appeal, challenging the trial court's decision on the merits. Plaintiffs contend the cross-appeal is moot because the five initiative petitions were placed on the 1980 primary ballot, and voted on, and the validity of the one initiative petition to receive voter approval is not challenged.[1]

Plaintiffs were members of a citizens' group that vigorously opposed the City's urban renewal policies. This proceeding was initiated when plaintiffs, sponsors of five initiative petitions, submitted the petitions to the Beaverton City Recorder on October 25, 1979, for deposit and placement on the May, 1980, primary election ballot, pursuant to Beaverton City Ordinance No. 1991.[2] The initiative petitions sought to limit the urban renewal powers of the City. On October 27, 1979, the City Recorder formally refused certification and deposit of the petitions on the ground that none of the five contained the requisite number of signatures, basing her refusal on the advice of the

[1] Because we conclude that the trial court's ruling on the merits must be dealt with in order properly to rule on plaintiffs' request for attorney fees, we do not rule on plaintiffs' motion to dismiss the cross-appeal. Defendants on their cross-appeal do not challenge the result of the election in which one of the five initiative petitions filed by plaintiffs received voter approval. If the trial court's ruling on the merits were incorrect, the validity of the ordinance passed by the voters could be challenged as void by persons not parties to this appeal.

[2] Sections 2 and 3 of Beaverton City Ordinance No. 1991 provided:

"Section 2. *Complete Procedure.* This ordinance provides a complete procedure for the voters to exercise their initiative and referendum powers.

"Section 3. *Manner of Proposing Measure.* The manner of proposing a measure by the initiative shall be to deposit at the office of the recorder a duly prepared petition ordering the measure to be submitted to the voters." (Emphasis in original.)

We also note that Section 13 of Ordinance No. 1991 has been repealed and superseded by City Ordinance No. 3170 which redefines regular and special elections consistent with appellants' contention on this appeal.

City Attorney and on previous interpretations of Ordinance No. 1991 by the Beaverton City Council.[3]

The relevant sections of Beaverton City Ordinance No. 1991 provided:

"Section 1. *Definitions.* As used in this ordinance, the following terms shall mean:

" * * * * *

"(5) Regular election. The regular city elections held at the same times as primary and general biennial elections for electing state and county officers.

"(6) Special election. Any election not held on the date of a regular election.

" * * * * *

"Section 13. *Requisite Number of Signatures.* The number of signatures on a petition requisite to its being deemed duly prepared shall be, for an initiative petition, 15 * * * per cent of the number of votes cast for the office of mayor at the regular election last preceding the deposit of the petition at the office of the recorder after its circulation.

" * * * * *

"Section 16. *Certification of Signatures.* Within 10 days after a duly prepared petition is deposited at his office, the recorder shall verify the number and genuineness of the signatures and voting qualifications of the persons signing the petition by reference to the registration books in the office of the county clerk of Washington County and, if a sufficient number of voters signed the petition, he shall so certify and file said petition. If the recorder determines that there is an insufficient number of signatures, he shall return the petition to the sponsor or person offering the petition for filing." (Emphasis in original.)

In acquiring signatures for their initiative petitions, plaintiffs calculated the number necessary to comply with Section 13 of Ordinance No. 1991, on the basis of the number of votes cast for mayor at the May, 1978, primary election in which a mayor was elected pursuant to Section 37 of the Beaverton City Charter. (See 53 Or App at 876, *infra.*)

The position taken by the City Recorder and concurred in by the City Council on November 19, 1979, was

---

[3] The reasons for the Recorder's refusal to accept and certify the petitions were set forth in a letter to plaintiffs' counsel, which apparently was prepared for the Recorder's signature by the Beaverton City Attorney.

that the May, 1978, election was not a "regular" election within the meaning of Section 13 of Ordinance No. 1991, because that election was not held at the normal time prescribed for mayoral elections but was called, held, and canvassed as a special election to fill a vacancy in the office of mayor after the previous mayor's early resignation.

Normally elections for mayor in Beaverton are held once every four years. It is undisputed that: the last election for mayor held in the ordinary course occurred at the general election in November, 1976; if based upon the results of that election, the requisite number of signatures for plaintiffs' initiative petitions would be 1445; if based upon the election of May, 1978, the number of signatures actually contained in plaintiffs' petitions, 775, was sufficient.

In rejecting the petitions, the City took the position that the November, 1976, election, as the last "regular" election for mayor, controlled. While on one prior occasion when the City took an identical position with respect to initiative petitions attempted to be filed by plaintiffs, plaintiffs acquiesced in the decision and obtained additional signatures rather than challenge the interpretation of the ordinance, the plaintiffs, after the rejection of the petitions in this instance, commenced the present proceeding.

After trial, the trial court made special findings of fact and conclusions of law supporting the plaintiffs' interpretation of Section 13 of Ordinance No. 1991 and directed the City Recorder to accept and file the petitions, but deferred the plaintiffs' request for attorney fees pending a further hearing.[4] After a supplemental hearing on the

---

[4] The conclusions of law entered by the court provided as follows:

"1. That the last election held for the election of a mayor in the City of Beaverton was held on May 23, 1978, and that he was elected at a regular election on that date. Section 37 of the City Charter provides that where the office of mayor becomes vacant and the balance of the term is more than three years, that a successor *shall be elected at the next regular city election*. It is clear that whether the mayor is elected under this section or under Section 27 of the Charter, that he can only validly be elected to office at a regular city election.

"2. The required number of signatures to be affixed to said petitions shall be not less than 775 in number to qualify the same to be filed.

issue of attorney fees, the court entered an order in conformity with its previous findings and conclusions and awarded plaintiffs costs, but denied the request for attorney fees.

Because plaintiffs' request for attorney fees may be dependent upon their right to prevail on trial and on appeal, we deal first with the defendants' cross-appeal. *But see, Williams v. City of Astoria,* 43 Or App 745, 753, 604 P2d 411 (1979), *rev den* 288 Or 667 (1980).

To decide that the trial court correctly held that the May, 1978, election was a regular election, we need refer only to the provisions of Section 13 of Ordinance No. 1991 and Sections 27 and 37 of the Beaverton City Charter. Section 27 of the City Charter provides:

" * * * Regular city elections shall be held at the same times and places as primary and general biennial elections for electing state and county officers. At each regular city election all elective officers to be nominated or elected at that time and all matters submitted to the electors at that time shall be voted upon. The election of officers and precincts within the city for such State and County elections shall be the elections officers and precincts for regular city elections."

Section 37 of the Beaverton City Charter provides:

" * * * If a vacancy in elective office occurs more than three years prior to expiration of the term of such office, a successor to serve the balance of such term shall be elected at the next regular city election."

Here, because a vacancy occurred in the office of mayor more than three years prior to the expiration of the term for which the former mayor was elected, Section 37 of the Charter required that his successor be elected at the next regular city election. "Regular election," as defined by City Ordinance No. 1991(5), is an election "held at the same

"3. That the defendant Susanne C. Heimbigner, City Recorder for the defendant City of Beaverton, is required to and is hereby directed to accept and file the petitions described in paragraph 11 of the above 'Findings of Fact'.

"4. Attorneys' fees, if any, to be allowed to petitioners, pursuant to stipulation of parties, is deferred for further hearing." (Emphasis in original.)

times as primary and general biennial elections for electing state and county officers."

■ The May, 1978, election at which the successor mayor was elected was held at the same time as the primary election for electing state and county officers. Accordingly, we cannot agree with the contention that the election was not a regular city election. Moreover, the definition of "special election" in the same ordinance makes the City's contention that it was a special election untenable. "Special election" is defined as "[a]ny election not held on the date of a regular election." Ordinance No. 1991, Section 1(6), *supra.*

The fallacy of defendants' position is that defendants would have us read Section 13 of Ordinance No. 1991 to require that the number of signatures for a valid initiative petition be calculated on the number of votes cast for the office of mayor at the last *regular election for mayor.* The clear and unambiguous language of the ordinance makes the required number of signatures dependent on the number of votes cast *at the last regular election* next preceding the deposit of the petition. Under the ordinance, whether an election for mayor is "regular" for the purpose of calculating the number of signatures necessary to qualify an initiative petition turns upon the occurrence of the election on the date of the primary or general election, not upon how the City may have characterized the mayoral election in its canvassing. Language in *Wilson v. Wasco County,* 83 Or 147, 163 P 317 (1917), and *Putnam v. Milne,* 13 Or App 540, 511 P2d 442 (1973), to the effect that a special election may be held concurrently with a general election is inapposite, given the language of Section 13 of Ordinance No. 1991.

As the trial court correctly and succinctly stated in its conclusions of law:

" * * * the last election held for the election of a mayor in the City of Beaverton was held on May 23, 1978, and * * * he was elected at a regular election on that date. Section 37 of the City Charter provides that where the office of mayor becomes vacant and the balance of the term is more than three years, that a successor *'shall be elected at the next regular city election'.* It is clear that whether the

mayor is elected under this section or under Section 27 of the Charter, that he can only validly be elected to office at a regular city election." (Emphasis in original.)

The trial court correctly required the City Recorder to accept the initiative petitions containing signatures as calculated by the number of people who voted for mayor on the date of the primary election on May 23, 1978.[5]

Having determined that plaintiffs properly prevailed in their action to determine their rights under Section 13 of Ordinance No. 1991, we turn to plaintiffs' appeal of the trial court's denial of their request for attorney fees.

■ We commence with the following propositions: Courts of equity have inherent power to award attorney fees, even absent a statutory or contractual provision so providing, *Gilbert v. Hoisting & Port. Engrs.,* 237 Or 130, 138, 384 P2d 136, 139, 390 P2d 320 (1963), *cert denied* 376 US 963 (1964), and "this power has frequently been exercised in cases where plaintiff brings suit in a representative capacity and succeeds in protecting the rights of others as much as his own"; a plaintiff should not be required to bear the entire cost of litigation when the benefits flow equally to all members of the public. *Deras v. Myers,* 272 Or 47, 66, 535 P2d 541 (1975); *Williams v. City of Astoria, supra.*

■ The trial court's decision whether to award attorney fees in such a situation is discretionary. *Gettings v. City of Elgin,* 16 Or App 140, 517 P2d 686 (1974). Where a prevailing party to a proceeding in a trial court brought to protect the rights of others as much as his own is denied attorney fees in the trial court, this court, as a matter within its own discretion, may award or decline to award such fees. *Marquam Investment Corporation v. Beers,* 51 Or App 819, 822, 627 P2d 491 (1981).

---

[5] The City further claims in its argument on the merits that the trial court erred, because it failed to concur in the City Council's interpretation of the ordinance, and that there was no showing that the City Council's acts were arbitrary and capricious. These arguments presuppose some ambiguity in the ordinance. *Bienz v. City of Dayton,* 29 Or App 761, 776-777, 566 P2d 904 (1977); *Jehovah's Witnesses v. Mullen,* 214 Or 281, 296, 330 P2d 5 (1959). There is no ambiguity here.

In *Marbet v. Portland Gen. Elect.,* 25 Or App 469, 488, 550 P2d 465 (1976), *reversed on other grounds,* 277 Or 447, 561 P2d 154 (1977), this court, denying attorney fees, stated:

> "Intervenors claim a right to attorney fees for prosecuting this appeal, relying upon *Deras v. Myers* [citation omitted]. Their reliance is misplaced. To date, the Oregon Supreme Court has employed the equitable rule on attorney fees only in cases of constitutional significance. *Deras v. Myers, supra; Gilbert v. Hoisting & Port. Engrs.,* [citation omitted]. This case raises no constitutional issues."

Here, however, plaintiffs sought to vindicate the initiative right reserved to the people of the state of Oregon generally by Article IV, section 1(2)(a),[6] and further reserved to the voters of municipalities by Article IV, section 1(5),[7] of the Oregon Constitution.

■■    The power of voters of municipalities to initiate local legislation by petition is, like the initiative power of the people of the state at large, a substantive constitutional right. *Kosydar v. Collins, County Clerk,* 201 Or 271, 283-284, 270 P2d 132 (1954). Cities are authorized to provide their own *procedure* for the *manner* in which the initiative power may be exercised within limits set by Article IV, section 1(5). *Kosydar v. Collins, County Clerk, supra,* 201 Or at 284.

■    Under Ordinance No. 1991, citizens of the City of Beaverton were entitled to file initiative petitions which included the signatures of no more than 15 percent of the

---

[6] Article IV, section 1(2)(a), of the Oregon Constitution provides:

"The people reserve to themselves the initiative power, which is to propose laws and amendments to the Constitution and enact or reject them at an election independently of the Legislative Assembly."

[7] Article IV, section 1(5), of the Oregon Constitution provides:

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws, *but cities may provide the manner of exercising those powers as to their municipal legislation. In a city, not more than 15 percent of the qualified voters may be required to propose legislation by the initiative,* and not more than 10 percent of the qualified voters may be required to order a referendum on legislation." (Emphasis supplied.)

voters casting votes for the office of mayor in the last regular election preceding the filing of the petition. By enactment of Ordinance No. 1991, the City exercised its power, implicit in Article IV, section 1(5), to implement more liberal requirements for the exercise of the initiative power than it could have constitutionally imposed under that section. Once established by Ordinance No. 1991, however, the procedure became the only manner in which the substantive initiative power could be exercised by the citizens of the City of Beaverton.

In bringing this proceeding to enforce their right to file initiative petitions containing the requisite number of names specified by the existing city legislation, plaintiffs were acting to vindicate their substantive rights under the Constitution. The City's interpretation of Section 13 of Ordinance No. 1991, if left unchallenged, would have prevented filing of properly prepared initiative petitions and would have denied plaintiffs, as well as others, their right to vote on ballot measures concerning the City's urban renewal policies. In this case, no less than in *Williams,* where local political freedoms were at issue, or in *Gilbert,* where internal election processes of a union were involved, the individual citizens and citizens' organizations successfully bringing this action should not be required to bear the entire cost of litigation which provided all voters of the City of Beaverton with the opportunity to exercise their constitutionally guaranteed power to initiate local legislation. Although we recognize that, strictly viewed, this proceeding was not of constitutional significance, it vindicated a substantive constitutional right of plaintiffs and, in effect, protected the right for others, as well as themselves. *Deras v. Myers, supra.*

The trial court denied attorney fees on the basis that plaintiffs could have obtained signatures sufficient to satisfy the requirement of Section 13 of Ordinance No. 1991, as interpreted by the City Council, and thus have avoided this litigation. As we have pointed out, the petitions as submitted were qualified for acceptance. To deny attorney fees on the basis that the litigation could have been avoided by plaintiffs' acquiescence in an interpretation of the city ordinance which the trial court correctly

found to be unlawful is not a permissible basis upon which to exercise discretion to deny attorney fees. As stated by the Supreme Court in *Deras v. Myers, supra,* 272 Or at 66:

" * * * [C]ourts of equity have the inherent power to award attorney's fees. This power frequently has been exercised in cases where the plaintiff brings suit in a representative capacity and succeeds in protecting the rights of others as much as his own.

" * * * * * *

" * * * Correspondingly, plaintiff * * * should not be required to bear the entire cost of this litigation the benefits of which flow equally to all members of the public. * * *"

We conclude in the exercise of our own discretion that plaintiffs, as the prevailing party in trial and on the appeal of this case, are entitled to attorney fees for the entire proceedings.

The case is remanded for determination of reasonable attorney fees at the trial level.

Affirmed in part; reversed in part and remanded.