Argued and submitted June 28, affirmed December 11, 1996, petition for review denied March 4, 1997 (325 Or 45)

**STATE ex rel PEND-AIR CITIZEN'S COMMITTEE and Vera Simonton,**
*Appellants,*

*v.*

**CITY OF PENDLETON,**
a municipal corporation,
Judy Zoske, City Recorder for the
City of Pendleton, and Peter H. Wells,
City Attorney for the City of Pendleton,
*Respondents,*

*and*

**UMATILLA COUNTY,**
a political subdivision of the State of Oregon,
and Thomas L. Groat, Umatilla County Clerk,
*Defendants.*

(CV 940946; CA A88770)

929 P2d 1044

J. Haggerty-Foster argued the cause and filed the briefs for appellants.

Peter H. Wells argued the cause and filed the brief for respondents.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Relators, prevailing parties in a mandamus action, appeal, assigning error to the trial court's denial of attorney fees. Relators obtained a peremptory writ of mandamus directing the City of Pendleton to place an initiative on the ballot. We review the court's denial of attorney fees for abuse of discretion, ORS 34.210(2), and affirm.

In 1994, the City of Pendleton proposed to locate a solid waste transfer facility in a residential area. Relator, Pend-Air Citizen's Committee, is an organization that was formed to contest the siting of the proposed facility. Relator Vera Simonton, who was Pend-Air's president, owned property adjacent to the proposed site.

In June 1994, Simonton, as Pend-Air's president, presented defendant Wells, Pendleton's City Attorney, with a proposed form of an initiative petition. The proposed initiative would amend the City of Pendleton's charter to provide:

"Notwithstanding any other provision of the city charter or any city ordinance to the contrary, no solid waste transfer station shall be sited, constructed, or operated within 1,000 feet of an existing residential structure or residential zone without a vote of the people approving the facility."

Wells told Simonton that the form of the petition appeared to be correct but that the city would not certify the initiative for the ballot until the requisite number of signatures had been gathered and verified. Wells also gave Simonton oral and written directions concerning the city's initiative petition procedure and informed her that she should use the petition form included in the Secretary of State's City Elections Manual.

Relators subsequently gathered signatures for the initiative petition. As part of that effort, Simonton paid some of the people who gathered signatures. Throughout the signature-gathering process, relators followed Wells's instructions, and, particularly, used the form of initiative petition included in the Secretary of State's 1994 City Elections Manual. That form did not identify the name or address of the

chief petitioner or give notice that the person obtaining signatures was being paid.

On August 22, 1994, the Umatilla County Clerk certified that 1,290 electors, whose signatures had been verified, had signed the petition, which exceeded the 1,070 valid signatures required to submit the measure to the voters. Nevertheless, the city refused to place the proposed initiative on the November 1994 ballot because the petition's signature sheets did not identify the name and address of the chief petitioner or include a notice that the person gathering the signatures was being paid.[1] The city asserted that those deficiencies violated *former* ORS 250.265(2) and (5) and rendered the signatures invalid.[2]

On September 6, 1994, relators filed this action, seeking an alternative writ of mandamus to compel defendants to place the proposed initiative on the November 1994 ballot. Without dwelling unduly on the procedural or substantive complexities of the dispute, the issues appear to

---

[1] Simonton paid two of the three signature gatherers. The person who was not paid collected 330 ballot signatures, far short of the 1,070 ballot signatures needed to put the measure on the ballot.

[2] *Former* ORS 250.265 provided, in part:

"(2) An initiative or referendum petition shall designate the name and residence address of not more than three persons as chief petitioners.

"* * * * *

"(5) If the person obtaining the signatures on the initiative or referendum petition is being paid, the signatures shall be collected on a signature sheet that contains a notice stating that the person obtaining the signatures is being paid. The notice shall be in boldfaced type and shall extend across the signature area of the petition."

ORS 250.265 was substantially amended in 1995. Or Laws 1995, ch 607, § 30. ORS 250.265(2) continues to provide that the coverage of an initiative petition shall designate the name and address of not more than three persons as chief petitioners. ORS 250.265(4)(b) provides, in part:

"Each sheet of signatures on an initiative or referendum petition shall:

"* * * * *

"(B) If one or more persons will be paid for obtaining signatures of electors on the petition, contain a notice stating: 'Circulators For This Petition Are Being Paid'; and

"(C) If the person obtaining the signatures on the initiative or referendum petition is being paid, contain a notice stating that the person obtaining the signatures is being paid. The notice shall be in boldfaced type and shall be prominently displayed on the sheet."

have reduced to two: (1) What was the proper relationship between Pendleton City Ordinance #3488, which prescribes procedures for initiative petitions to enact ordinances or amendments to the city charter, and ORS 250.265 to ORS 250.346, prescribing procedures for initiatives on municipal measures? (2) If ORS 250.265 *et seq* controls, did relators' violations of *former* ORS 260.265(2) and (5) preclude placing the matter on the ballot—or did the city have a legal duty, despite those violations, to submit the proposed initiative to the electorate?

The parties' cross-motions for summary judgment ultimately were heard on December 5, 1994. The court issued the writ, directing defendants to place the initiative on the ballot on the next appropriate election date, March 28, 1995:

"[T]he court is going to rule in favor of the relators * * * and direct that the matter be placed before the electorate.

"The court does so with some reluctance because I think that, one, that the law should have been complied with but again, the legislature [has not] given any indication as to what should be done if they don't follow the provisions of the law. It makes a lot of sense to me that all of the petitions that were circulated should have had that notice on them but * * * the court feels that, given all the circumstances in this case, that the matter should be allowed to go to the people."

Defendants do not dispute the correctness of that ruling.

Although it issued the writ, the court denied relators' request for attorney fees. In their operative second amended alternative writ of mandamus, relators pleaded that they were entitled to attorney fees "pursuant to ORS 34.210 and ORCP 68."[3] In their briefing and arguments that preceded the issuance of the writ, the parties do not appear to have addressed relators' asserted entitlement to attorney fees. Immediately after rendering its oral opinion that relators were entitled to prevail on the merits, the court continued:

"In this matter, the court's not going to allow attorney fees on either side. I think if this were a case where we were

---

[3] The text of ORS 34.210 is set out below.

dealing with some black and white, I might impose attorney fees but this is such a gray area that I don't believe that they're warranted in this case. As I say, I appreciate the effort by both counsel. It's been a tremendous amount of effort. I can tell by the work that you've done and I do appreciate it but I believe that, given the circumstances that prevail, the court is not going to allow attorney fees."

Relators subsequently moved for reconsideration of the court's denial of fees. In so doing, they argued that they are entitled to fees under ORS 34.210(2) and under the rationale of *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975), and *Umrein v. Heimbigner*, 53 Or App 871, 632 P2d 1367 (1981). It is not clear from relators' memorandum whether they were invoking ORS 34.210(2) and the *Deras/Umrein* line of cases as separate and distinct sources of entitlement to attorney fees or whether, in their view, the latter offered guidance as to the proper allowance of fees under the former. Although defendants opposed reconsideration,[4] the court subsequently heard oral argument on the motion to reconsider and reaffirmed its denial of attorney fees.[5]

On March 28, 1995, the electors of the City of Pendleton approved the proposed initiative.

On appeal, relators unambiguously assert that the *Deras/Umrein* analysis and ORS 34.210(2) describe independent and distinct bases of entitlement to attorney fees. Relators further assert that they are entitled to recovery on either of those bases, which relators style, respectively, as "equitable entitlement" and "statutory entitlement." Relators acknowledge that the trial court's denial of fees is reviewed under an abuse of discretion standard but contend that, in this context, the court's discretion is narrowly cabined and that, in these circumstances, the court's exercised discretion impermissibly exceeded those confines. Before addressing the particulars of relators' arguments, a brief review of the asserted sources of entitlement is useful.

---

[4] In so doing, defendants invoked former Chief Justice Peterson's apt observation that "[l]awyers filing motions to reconsider after entry of judgment might better denominate such a motion as a 'motion asking for trouble[.]'" *Carter v. U. S. National Bank*, 304 Or 538, 546, 747 P2d 980 (1987) (Peterson, C. J., concurring).

[5] The record of the hearing on reconsideration was not designated as part of the appellate record.

In *Deras*, the plaintiff, a candidate for state repre-
sentative, sought and obtained a declaratory judgment that
certain restrictions on campaign spending were unconstitu-
tional. Although the plaintiff prevailed on the merits, the
trial court refused to award him attorney fees. The Supreme
Court reversed and directed the trial court to award the
plaintiff his reasonable attorney fees. In so doing, the court
acknowledged the general principle that a prevailing party is
not entitled to fees "absent authorization of statute or con-
tract." 272 Or at 66. Nevertheless:

> "[C]ourts of equity have the inherent power to award attor-
> ney's fees. This power frequently has been exercised in
> cases where the plaintiff brings suit in a representative
> capacity and succeeds in protecting the rights of others as
> much as his own. We recognized this equitable exception to
> the general rule in *Gilbert v. Hoisting & Port. Engrs.*, 237
> Or 130, 384 P2d 136, 390 P2d 320, *cert. denied* 376 US 963,
> 84 S Ct 1125, 11 L Ed 2d 981 (1964), a substantially similar
> case to the one at hand. In *Gilbert*, the plaintiffs sued the
> union of which they were members to require fair and dem-
> ocratic elections. We allowed the plaintiffs attorney's fees at
> both trial and appellate levels[.][6]

> "It is beyond dispute that the interest of the public in
> preservation of the individual liberties guaranteed against
> governmental infringement of the constitution is even
> stronger than that present in *Gilbert*. Correspondingly,
> plaintiff in this case, at least as much as the plaintiffs in
> *Gilbert*, should not be required to bear the entire cost of this
> litigation the benefits of which flow equally to all members
> of the public." *Id.* at 66 (footnotes omitted).[7]

---

[6] In *Gilbert*, the court observed:

"The preservation of the democratic process in the functioning of unions is a
matter of primary concern, not only to union members but to the public as well.
* * * Those members of the union who in good faith seek to preserve the inter-
nal democracy of their union should not have to bear the expense of a success-
ful suit." 237 Or at 138.

[7] Since its decision in *Deras*, the Supreme Court has not exercised its inherent
equitable power to award attorney fees under *Deras*'s rationale. *See Dennehy v.
City of Gresham*, 314 Or 600, 602, 841 P2d 633 (1992) (citing cases). Nevertheless,
in *Dennehy*, the court carefully noted that its most recent denials were based on
determinations that "the facts simply do not justify exercise of the 'inherent equi-
table power' to award attorney fees." *Id.* at 604 (noting that the facts in *Dennehy*
were "a far cry from the facts of *Deras*, where the plaintiff vindicated an important
constitutional right applying to all citizens without any gain peculiar to the
plaintiff").

In *Umrein*, members of a citizens group sought a declaratory judgment that they were entitled to have certain initiatives that limited the City of Beaverton's urban renewal powers submitted to the electorate. The plaintiffs also asserted an entitlement to attorney fees under *Deras*'s rationale. The trial court granted declaratory relief but denied fees. We reversed.[8] In so holding, we noted that "[t]he trial court's decision whether to award attorney fees in such a situation is discretionary," 53 Or App at 878, but concluded that, because the plaintiffs had succeeded in vindicating a broad constitutionally based[9] interest for others, as well as themselves, they were entitled to recover attorney fees.

The last case in the *Deras / Umrein* line that is pertinent to our inquiry is *State ex rel Sajo v. Paulus*, 297 Or 646, 688 P2d 367 (pertaining to merits), 298 Or 281, 691 P2d 106 (1984) (pertaining to entitlement to attorney fees). *Sajo*, like this case, was a mandamus proceeding, although the petitioners there sought mandamus under the Supreme Court's original jurisdiction. The petitioners, proponents of an initiative to decriminalize certain conduct involving marijuana, sought to compel the Secretary of State and other elections officials to place the initiative on the ballot. The relators' substantive claim was that the Secretary of State had applied improper signature verification procedures in determining

---

[8] In *Umrein*, the trial court denied fees because it found that even if the plaintiffs had acquiesced in the city's determination as to the necessary number of signatures required to place the initiative on the ballot (which was the subject of the declaratory relief), they still could have obtained sufficient signatures and, thus, have avoided the litigation. We concluded:

"To deny attorney fees on the basis that the litigation could have been avoided by plaintiffs' acquiescence in an interpretation of the city ordinance which the trial court correctly found to be unlawful is not a permissible basis upon which to exercise discretion to deny attorney fees." *Id*. at 880-81.

[9] In *Marbet v. Portland Gen. Elect.*, 25 Or App 469, 488, 550 P2d 465 (1976), *rev'd on other grounds* 277 Or 447, 561 P2d 154 (1977), which involved no constitutional issues, we denied fees based on our observation that the Oregon Supreme Court had employed the *Deras* rule "only in cases of constitutional significance." In *Koon v. City of Gresham*, 123 Or App 513, 860 P2d 848 (1993), *rev den* 318 Or 326 (1994), we elaborated on *Marbet*:

"Without deciding whether we were correct in *Marbet* in limiting *Deras* only to questions of constitutional magnitude, it is clear that the logic of the attorney fee analysis in *Deras* and later cases applies only when the issue is one of *some* magnitude and when the plaintiff obtains some cognizable public benefit." *Id*. at 517 (emphasis in original).

that the relators had failed to submit the required number of valid signatures. The court agreed with some, but not all, of the relators' challenges to the signature verification methodology and issued a peremptory writ ordering the defendant elections officials to immediately count and verify the signatures under the proper methodology "and if the sampling process yields a sufficient number of signatures," to place the initiative on the ballot. 297 Or at 661. The elections officials subsequently recalculated the number of signatures and determined that the relators still had not submitted the requisite number of valid signatures; accordingly, the initiative was not submitted to the electorate.

The relators subsequently petitioned for attorney fees. The court, in a memorandum opinion, denied fees without explanation. 298 Or at 281. Three members of the court dissented from that denial, asserting that, under *Deras*'s rationale, the relators should be entitled to recover at least some fees, despite the fact that the initiative was not placed on the ballot, because they had successfully litigated issues of broad public significance relating to the administration of the initiative process. Thus, the dissenting justices would have awarded "some reasonable amount of attorney fees commensurate with the contribution that petitioners' legal action has made to the public interest in the lawful administration of the initiative process." *Id.* at 284. At the time fees were denied in *Sajo*, there was no statutory provision for awarding attorney fees in mandamus proceedings.

In 1989, the legislature enacted ORS 34.210(2), which provides:

> "(2) The court in its discretion may designate a prevailing party and award attorney fees, costs and disbursements to the prevailing party, but no attorney fees, costs and disbursements shall be awarded against a judge as a defendant in a mandamus action for any action taken in the judge's official capacity. Attorney fees, costs and disbursements may only be awarded against adverse parties who have been served with the petition and writ."

The text of the statute states that the allowance or disallowance of attorney fees, costs and disbursements is a matter committed to the court's "discretion." However, the statute's

text does not identify any considerations that are to guide or limit the court's exercise of discretion. Nor can any informing principles or limitations on the exercise of amorphous and ambiguous discretion be divined from statutory context.

Reference to legislative history is equally unenlightening. The legislators' discussion was brief, with the only arguably pertinent colloquy occurring during the Senate Judiciary Committee's consideration:

"SEN. GRENSKY: Why should it be discretionary, if the party prevails, shouldn't they be entitled to attorney fees, and if it is discretionary, then what are the boundaries for determining when it is appropriate and when it isn't—because my experience in the one we had and I think a lot of times this would be the case, the big issue of damages is the attorney fees. That is where the real costs in these cases arise, and I just would hate to see that kind of cost become an issue that gets decided after years of litigation with people wondering whether they're going to get that $10,000 in attorney fees. It would really be a problem, I think, not knowing whether if you won, you'd get that.

"SEN. SHOEMAKER: One reason for that is that you don't want to chill the process. There can be a perfectly legitimate writ brought in perfectly good faith by a plaintiff which may after a hearing prove to be unsuccessful because you weigh everything carefully and you say well, no, but it still was an appropriate proceeding. And I think too . . . it's kind of an equity thing and if you know that if you lose this, you're going to have to pick up the other guy's attorney fees, you may well not bring one of these when you really should do it. It's just going to chill the whole process, and that's why I think it is appropriate to leave it to the judge's discretion." Tape recording, Senate Judiciary Committee, February 24, 1989, Side A at 298, Side B at 0 (Hearing on SB 288).

We have considered the availability of attorney fees under ORS 34.210(2) only once. *State ex rel Compass Corp. v. City of Lake Oswego*, 135 Or App 148, 898 P2d 198 (1995). There we concluded, without exploring the contours of the court's discretion, that the successful relator was entitled to attorney fees incurred on appeal.[10]

---

[10] The dispute in *Compass*, which was before us on remand from the Supreme Court, *see* 319 Or 537, 540, 878 P2d 403 (1994), was whether ORS 34.210(2)

From the foregoing review of the bases of relators' asserted entitlement to attorney fees, we draw four conclusions, which are amplified below: *First*, relators' sole basis for entitlement to attorney fees is ORS 34.210(2). That is, the *Deras / Umrein* "equitable entitlement" analysis does not provide a distinct and independent source of entitlement to fees for relators.

*Second*, although the *Deras / Umrein* "equitable" analysis is not a source of entitlement, the principles underlying that analysis properly inform the exercise of discretion under ORS 34.210(2) in appropriate cases. Where, as here, successful relators have vindicated the rights of others with respect to some broad-based interest, including particularly an interest in the proper administration of the initiative process, that vindication militates in favor of a discretionary fee award.

*Third*, although *Deras / Umrein* principles properly inform the exercise of discretion under ORS 34.210(2), other factors are also properly considered. Those factors include, but are not limited to, the objective reasonableness of a defendant's refusal to perform the act that is ultimately mandated. Where, as here, the legal questions underlying defendants' refusal to act were close and complex, that factor may militate against an award of fees.

*Fourth*, given those competing considerations, the trial court could, within the reasonable range of discretion, have either granted or denied fees. Thus, the latter was not an abuse of discretion.

■      Our first conclusion, that ORS 34.210(2) is relators' sole basis for entitlement to fees, is unremarkable. That statute expressly authorizes attorney fee awards in any mandamus action, and, thus, encompasses awards of fees to successful relators in proceedings involving some *Deras / Umrein*-like vindications of a broader public interest. Conversely, there appear to be no instances in which prevailing relators were awarded fees under a *Deras / Umrein* analysis; indeed, in the only case that squarely presented the issue, the

---

authorized an award of fees to a party who obtained an alternative writ of mandamus pursuant to ORS 227.178(7).

Supreme Court denied fees without explanation. *See Sajo,* 298 Or 281.[11] The cleanest, and most sensible, result is that ORS 34.210(2) is exclusive.

■     Our second conclusion, concerning the scope and content of "discretion" under ORS 34.210(2), is less simple. As noted, the statute states, without elaboration, that "[t]he court in its discretion may * * * award attorney fees." Our task is to discern, at least with respect to the circumstances of this case, the limits of that discretion. The extremes of the continuum of "discretion" are clear: If the legislature intended that prevailing relators recover fees in all cases, it would have said "shall" not "may";[12] conversely, if the legislature intended that prevailing relators never recover their fees, it would not have enacted ORS 34.210(2). ORS 34.210(2) does not sanction whimsical or unprincipled judicial action. Thus, "discretion"—or, conversely, "abuse of discretion"—must be tested against some undescribed criteria. We must identify the criteria that are pertinent in this case.

Without purporting to identify all pertinent criteria in any mandamus proceeding, we are persuaded that a prevailing relator's success in securing a broader public benefit militates in favor of an award of fees pursuant to ORS 34.210(2). That is, a relator's success in the *Deras/Umrein* sense properly informs the court's exercise of discretion. Our

---

[11] There are, moreover, substantial, and perhaps insuperable, difficulties with implying a *Deras/Umrein* "equitable entitlement" in a mandamus proceeding. *Deras*'s analysis was explicitly premised on the "inherent power" of "courts of equity" to award attorney fees. 272 Or at 66. Conversely, although mandamus "is awarded not as a matter of right, but in the exercise of a sound judicial discretion and upon equitable principles," it has historically been denominated a "special proceeding" distinct from a suit in equity. *Buell v. Jefferson County Court,* 175 Or 402, 408, 152 P2d 578 (1944); *see also* Chester James Antieau, 1 *The Practice of Extraordinary Remedies* § 2.07, 300-01 (1987). Thus, historically, writs of mandamus were not issued by a court of equity. Nevertheless, as discussed below, because mandamus refers to "equitable principles," *Buell,* 175 Or at 408, even if the equitable principles underlying *Deras/Umrein* do not give rise to an independent entitlement to fees, they are properly considered in exercising discretion under ORS 34.210(2).

[12] *But see Executive Mgt. Corp. v. Juckett,* 274 Or 515, 519, 547 P2d 603 (1976) (although ORS 91.755 provides that reasonable attorney fees "may be awarded" to the prevailing party in a residential FED action, such fees are to be awarded "barring unusual circumstances which might arise in any particular case"); *Tanner v. Grissom,* 135 Or App 309, 312, 898 P2d 797 (1995).

conclusion accords with the purpose of mandamus—to compel governmental actors to perform acts "which the law specifically enjoins, as a duty resulting from an office, trust or station[.]" ORS 34.110. Indeed, in that respect, relators' petition in this case was functionally indistinguishable from the action for declaratory judgment in *Umrein*; both sought a determination that defendants had improperly refused to place measures on the ballot because of erroneous interpretations of elections statutes and ordinances. We perceive no principled basis for holding that the considerations that compelled our attorney fee award in *Umrein* are immaterial to a principled exercise of discretion under ORS 34.210 with respect to the present parties, and we decline to do so.

■ Our determination that *Deras/Umrein*-like "vindication" should be considered under ORS 34.210(2) does not, however, mean that that consideration is dispositive or exclusive. Rather, other factors may militate against a discretionary award of fees. Defendants assert that the ground on which the trial court denied fees—*i.e.*, that the underlying dispute was not "black and white"—was such a permissible countervailing consideration. As authority for that position, defendants invoke *Van Gordon v. Ore. State Bd. of Dental Examiners*, 63 Or App 561, 666 P2d 276 (1983), and *Baptist v. Adult & Family Services Div.*, 64 Or App 265, 668 P2d 428 (1983).

In *Van Gordon*, we explored the contours of our discretion in awarding attorney fees under *former* ORS 183.495, on review of a final order in a contested case proceeding. *Former* ORS 183.495 provided:

> "Upon judicial review of a final order of an agency when the reviewing court reverses or remands the order it may, in its discretion, award costs, including reasonable attorney fees, to the petitioner to be paid from funds appropriated to the agency."[13]

---

[13] *Former* ORS 183.495 was repealed by Oregon Laws 1985, chapter 757, section 7. The present attorney fee provision of the Administrative Procedures Act, ORS 183.497, provides:

"(1) In a judicial proceeding designated under subsection (2) of this section, the court:

"(a) May, in its discretion, allow a petitioner reasonable attorney fees and costs if the court finds in favor of the petitioner.

We identified two functions of the statute that guided the exercise of discretion:

> "First, fee awards ought to serve as deterrents to groundless or arbitrary agency action. Second, the statute should operate to redress individuals who have borne unfair financial burdens defending against groundless charges or otherwise attempting to right mistakes that agencies should never have committed." 63 Or App at 565-66.

We then engaged in an extended analysis of the relationship between those considerations and the various bases for reversal of administrative action under ORS 183.482 (*e.g.*, procedural errors, erroneous interpretation of law, improper exercise of discretion, lack of substantial evidence). In our discussion of entitlement to fees when reversal is based on erroneous interpretation of law under ORS 183.482(8)(a), we concluded that an agency's reasonable but erroneous interpretation of an ambiguous statute generally would not warrant the award of fees:

> "[A]n interpretation will be deemed 'reasonable' even though it is wrong if the interpretation has some basis in the language or the legislative history of the statute, or if the interpretation is consistent with some stated purpose of the scheme of which the statute is a part. When we reverse and remand in such a case because we have concluded that a different interpretation is the correct one, an award of an attorney fee will serve neither of the purposes we have

---

"(b) Shall allow a petitioner reasonable attorney fees and costs if the court finds in favor of petitioner and determines that the state agency acted without a reasonable basis in fact or in law; but the court may withhold all or part of the attorney fees from any allowance to a petitioner if the court finds that the state agency has proved that its action was substantially justified or that special circumstances exist that make the allowance of all or part of the a attorney fees unjust.

"(2) The provisions of subsection (1) of this section apply to an administrative or judicial proceeding brought by a petitioner against a state agency, as defined in ORS 291.002, for:

"(a) Judicial review of a final order as provided in ORS 183.480 to 183.484;

"(b) Judicial review of a declaratory ruling provided in ORS 183.410; or

"(c) A judicial determination of the validity of a rule as provided in ORS 183.400.

"(3) Amounts allowed under this section for reasonable attorney fees and costs shall be paid from funds available to the state agency whose final order, declaratory ruling or rule was reviewed by the court."

ascribed to ORS 183.495. A fee award will not deter similar actions in the future, because reasonable misinterpretations are mistakes made in good faith rather than reckless or intentional decisions to adopt erroneous constructions. There is also less of a 'fairness' justification for attorney fees in such cases." *Id*. at 568.

*Accord Swarens v. Dept. of Revenue*, 320 Or 669, 674, 890 P2d 1374 (1995) (agreeing with *Van Gordon*'s rationale for denying attorney fees in the context of a discretionary award of attorney fees in tax appeals); *Baptist*, 64 Or App at 270 (denying fees under ORS 183.495 where agency's interpretation of disputed rule was "reasonable, although wrong").

■     We agree with defendants that *Van Gordon*'s analysis is apt. The same functions that could "properly be ascribed" to *former* ORS 183.495 could also be properly ascribed to ORS 34.210. *See McKean-Coffman v. Employment Div.*, 314 Or 645, 650, 842 P2d 380 (1992) ("An award of attorney fees [when an agency has acted reasonably], while certainly encouraging to individual litigants as petitioner, could have the undesirable effect of discouraging agencies from vigorously advocating reasonable policy positions in the courts."). Moreover, defendants' interpretation of the complex of state statutes and local ordinances, which underlay their refusal to place the initiative on the ballot, was reasonable. Indeed, the trial court determined that defendants were correct in concluding that *former* ORS 250.265(2) and (5) controlled and that relators' petition and signature sheets did not comply with that statute. Thus, the court granted relators relief not because defendants had unreasonably interpreted the law but because

"the legislature * * * has not bothered to give us any indication as to what should be done if they don't follow the provisions of the law. It makes a lot of sense to me that all of the petitions that were circulated should have had that notice on them but since the legislature * * * does not bother to tell us what they want us to do, the court feels that, given all of the circumstances in this case, that the matter should be allowed to go to the people."

Relators prevailed, then, not because defendants' failure to act was grounded in an unreasonable interpretation of the

law, but because the trial court resolved an extremely close issue of first impression in their favor.[14]

Given those circumstances, and in the light of our understanding of the considerations that properly inform the exercise of discretion under ORS 34.210(2), the trial court's denial of fees was within the permissible scope of discretion. That is, the court could properly have either allowed or denied fees. The latter was not an abuse of discretion.

Affirmed.

---

[14] As noted previously, defendants do not dispute the correctness of the trial court's determination that violations of *former* ORS 250.265 did not preclude placing the initiative on the ballot. Nor do defendants dispute the general availability of mandamus where the effects of violations of ORS 250.265, particularly regarding defendants' legal duties with respect to the preparation and filing of proposed initiatives, were unsettled. *Accord State ex rel Maizels v. Juba*, 254 Or 323, 328, 460 P2d 850 (1969) ("It is plain, regardless of what this court has said to the contrary, that mandamus has repeatedly been used to require public officers, including inferior courts, to act in a certain way where the applicable law governing their actions was legitimately in dispute.").