2007 UT 97

**UTAHNS FOR BETTER DENTAL HEALTH–DAVIS, INC., a Utah nonprofit corporation, Plaintiff and Appellant,**

v.

**DAVIS COUNTY CLERK, Steven S. Rawlings, Defendant and Appellee.**

No. 20060321.

Supreme Court of Utah.

Dec. 21, 2007.

Rehearing Denied Jan. 16, 2008.

We reverse the district court and award UFBDH attorney fees in this matter under the private attorney general doctrine.

## BACKGROUND

¶ 2 During the November 2000 general election, Davis County citizens voted on an opinion question that asked, "Should fluoride be added to the public water supplies within Davis County?" With fifty-two percent of voters favoring the addition of fluoride to water supplies and forty-eight percent opposing fluoridation, the addition of fluoride was approved. A group of Davis County citizens opposed to fluoridation subsequently sought to have a revote on the issue, circulating a petition among voters so that the identical opinion question from the 2000 general election would be on the ballot during the 2002 general election. Treating it as an initiative petition, the Davis County Clerk submitted the petition to the Davis County Commission, which took no action on it. Pursuant to Utah Code section 20A–7–501(3)(d),[1] the County Clerk stated that he would place the opinion question on the ballot during the 2002 general election.

¶ 3 UFBDH, a nonprofit corporation organized to advocate for the public health benefits of fluoridation, questioned the constitutionality of placing the revote question on the 2002 ballot. It sought a declaratory judgment and injunctive relief against the Davis County Clerk and the Davis County Commission. The Commission was dismissed from the suit, but the district court found in favor of UFBDH and against the County Clerk. Recognizing the " 'sacrosanct and fundamental right' "[2] to legislate directly through the initiative and referenda processes, the court held that the County Clerk's decision to place the petition "on the ballot violate[d] Utah constitutional and statutory law governing initiatives and referenda." If classified as a referendum, the petition was untimely, and if viewed as an initiative, the petition was "an inappropriate mechanism to change the law

David R. Irvine, Janet I. Jenson, Salt Lake City, for plaintiff.

Melvin C. Wilson, Farmington, J. Kevin Murphy, Salt Lake City, for defendant.

DURHAM, Chief Justice:

¶ 1 Utahns For Better Dental Health–Davis, Inc. (UFBDH) appeals from the district court's denial of an attorney fee award.

---

1. Utah Code section 20A–7–501(3)(d) (2003) provides, "If a county legislative body rejects a proposed county ordinance or amendment, or takes no action on it, the county clerk shall submit it to the voters of the county at the next regular general election."

2. The trial court quoted *Gallivan v. Walker*, 2002 UT 89, ¶ 27, 54 P.3d 1069.

of fluoridation within Davis County." The court stated that allowing the petition to be placed on the ballot would be a "misuse [of] the people's direct legislative power" granted in article VI, section 1 of the Utah Constitution and would "thwart the will of a majority of Davis County voters." The court noted that "the public ... ha[s] a real and substantial interest in ensuring that the laws of initiative and referenda are scrupulously followed and the election process adheres to the rule of law."

¶ 4 UFBDH motioned for an award of attorney fees pursuant to the private attorney general doctrine, which the district court denied. UFBDH appealed, and the court of appeals concluded that the district court had "failed to enter adequate subsidiary findings to justify its ultimate conclusion," eliminating the court of appeals ability to meaningfully review the case. *Utahns For Better Dental Health–Davis, Inc. v. Davis County Comm'n*, 2005 UT App 347, ¶ 12, 121 P.3d 39. The court of appeals remanded for the entry of adequate findings and conclusions and a decision in accordance with those findings and conclusions. *Id.* ¶ 13. The district court did so, again denying an award of attorney fees. In explaining the denial, the district court relied on the lack of a substantial monetary benefit created by UFBDH's actions, a lack of a windfall to the Davis County Clerk, and the ability of UFBDH to pay its own attorney fees. It stated that the "mere interpretation of a contested petition" was not a strong or societally important public policy issue and that no "actual or concrete benefits" were created by this case. UFBDH appealed from that order. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).[3]

### ANALYSIS

■ ¶ 5 "In general, Utah follows the traditional American rule that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." *Hughes v. Cafferty*, 2004 UT 22, ¶ 21, 89 P.3d 148. "However, in the absence of a statutory or contractual authorization, a court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interests of justice and equity." *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994). This court has recognized the private attorney general doctrine as one method for granting equitable awards of attorney fees. In *Stewart*, this court explicitly relied on the private attorney general doctrine to require an award of attorney fees when the " 'vindication of a strong or societally important public policy' takes place and the necessary costs in doing so 'transcend the individual plaintiff's pecuniary interest to an extent requiring subsidization.' " *Id.* at 783 (quoting *Serrano v. Priest*, 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303, 1314 (1977)). We also commented on the "exceptional nature" of the *Stewart* case, and stated that "any future award of attorney fees under [the private attorney general doctrine would] take an equally extraordinary case." *Id.* at 783 n. 19.

### I. DE NOVO REVIEW IS THE APPROPRIATE STANDARD OF REVIEW FOR ATTORNEY FEE AWARDS UNDER THE PRIVATE ATTORNEY GENERAL DOCTRINE

■ ¶ 6 This case presents only the second opportunity we have had since *Stewart* to review a trial court's denial of attorney fees pursuant to the private attorney general doctrine. Our first opportunity was in *Shipman v. Evans*, 2004 UT 44, 100 P.3d 1151, where we, without analysis as to the unique nature of the private attorney general doctrine, simply imported the abuse of discretion standard from *Hughes*. In *Hughes*, we considered equitable awards of attorney fees after *Stewart*. We were not, however, considering the private attorney general doctrine, but rather equitable awards of attorney fees in the context of a beneficiary suing a trustee and vindicating the rights of all other harmed beneficiaries. *Hughes*, 2004 UT 22, ¶ 22, 89 P.3d 148. In *Shipman*, we failed to acknowledge the unique policy implications associat-

---

**3.** We determined to transfer the first appeal to the court of appeals, but to retain this second appeal.

ed with the private attorney general doctrine. Today we recognize that the highly deferential standard of review utilized for other equitable awards of attorney fees is unsuitable for private attorney general doctrine cases and conclude instead that de novo review should be applied.[4]

¶ 7 In *Hughes*, 2004 UT 22, ¶ 24 n. 2, 89 P.3d 148, our determination to apply the abuse of discretion standard of review to equitable awards of attorney fees was based largely upon our discussion in *State v. Pena*, 869 P.2d 932, 936 (Utah 1994), of the opportunities for trial courts to "assess the credibility of witnesses and to derive a sense of the proceedings as a whole, something an appellate court cannot hope to garner from a cold record." Trial court determinations of attorney fee cases are generally multilayered,[5] and much of the trial court's work relies on its traditional capacity to evaluate witnesses' credibility, the weight of factual evidence, and the satisfaction by parties of their burdens of proof. Considerations like these, however, are not primarily implicated in cases involving the private attorney gener-

al doctrine. Part of the trial court's function in attorney fee deliberations depends on an understanding and proper interpretation of the applicable legal standard. *Cf. City of Sacramento v. Drew*, 207 Cal.App.3d 1287, 255 Cal.Rptr. 704, 710 (1989) (considering whether the grounds given by the trial court in denying an attorney fee award were consistent with the legal principles, substantive law, and the policy and purpose behind the private attorney general doctrine). Appellate courts do not, for example, generally defer to a trial court's determination as to whether a party has prevailed within the meaning of a contract or a statute, or as to whether a particular dispute qualifies for coverage under an attorney fee provision. *See, e.g., Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 8, 122 P.3d 556 ("Whether the trial court properly interpreted the legal prerequisites for awarding attorney fees under [the statute] is a question of law that we review for correctness." (internal quotation marks omitted)). The determination as to whether the *Stewart* extraordinary case standard has been met similarly requires legal analysis.[6]

---

4. An examination of a majority of the cases reviewing fees under the doctrine demonstrates that de novo review is in fact what appellate courts actually apply, even when they articulate deferential standards in this fairly unusual class of cases. *See Maria P. v. Riles*, 43 Cal.3d 1281, 240 Cal.Rptr. 872, 743 P.2d 932, 936–38 (1987) (engaging in an examination of the record to conclude that "[t]his is precisely the type of public interest lawsuit that the private attorney general doctrine ... was intended to foster"); *Westside Cmty. For Indep. Living, Inc. v. Obledo*, 33 Cal.3d 348, 188 Cal.Rptr. 873, 657 P.2d 365, 368–69 (1983) (engaging in full record review to overturn trial court's decision to award fees); *Baggett v. Gates*, 32 Cal.3d 128, 185 Cal.Rptr. 232, 649 P.2d 874, 881–83 (1982) (overturning trial court's denial of attorney fees under the private attorney general doctrine after a review of the record); *State v. Hagerman Water Right Owners, Inc. (In re SRBA Case No. 39576)*, 130 Idaho 718, 947 P.2d 391, 394–95, 396–99 (1997) (purporting to review for abuse of discretion, but appearing to treat each prong of the private attorney general test as a legal question in overturning an award of fees); *Taggart v. Highway Bd.*, 115 Idaho 816, 771 P.2d 37, 39 (1988) (engaging in review of the record to overturn trial court's denial of attorney fees). In fact, the Oregon Supreme Court explicitly recognized that, although a trial court's decision to award attorney fees is discretionary, when a prevailing party seeks to vindicate "the rights of others as much as his own ... [the supreme court,] as a

matter within its own discretion, may award or decline to award such fees." *Umrein v. Heimbigner*, 53 Or.App. 871, 632 P.2d 1367, 1371–72 (1981) (exercising supreme court's own discretion in awarding attorney fees to plaintiffs suing to enforce "their constitutionally guaranteed power to initiate local legislation"). Even in this court's own cases, where we purport to review awards of attorney fees based on abuse of discretion, we often engage in a review of the record. *See Hughes*, 2004 UT 22, ¶¶ 28, 30, 89 P.3d 148 (announcing the abuse of discretion standard of review for equitable awards of attorney fees yet conducting a review of the record to determine if such fees were appropriately awarded).

5. The trial court must resolve factual questions about the underlying merits of a dispute and the relief that should or should not be afforded. It must determine whether the legal standards for an award of fees have been met, whether those standards derive from contract, statute, or common law-doctrine, as in the case of private attorney general awards. Finally, it must make factual determinations about the nature, amount, and value of legal services provided, and ultimately reach some "equitable" conclusion about what, if any, attorney fees are due.

6. This is particularly true in the historical context where this court has had virtually no opportunity since *Stewart* to flesh out the content and contours of the private attorney general doctrine.

To leave to trial courts the determination of the existence of an extraordinary case under *Stewart* on an individual case-by-case basis without meaningful review by this court, which articulated the underlying doctrine permitting fees, would lead to inconsistency and even potential arbitrariness in its use and availability.

¶ 8 In private attorney general cases, the threshold issue is a rather transcendent, large picture question of public policy, namely, whether an important right affecting the public interest has been vindicated. A de novo standard of review of the grant or denial of fees in private attorney general cases is necessary to promote uniformity and predictability in these rare cases, to maintain judicial consistency and integrity in the use of the doctrine, and to encourage the private enforcement of important rights affecting the public interest. Because the threshold issue is one of public policy, appellate judges, who have the benefit of deliberating as a panel and reviewing the well-considered arguments of the parties on appeal, have an advantaged position to review such considerations.

## II. AN AWARD OF ATTORNEY FEES TO UFBDH IS APPROPRIATE IN THIS CASE

¶ 9 This case presents an example of the potential inconsistency and arbitrariness of fee awards under the private attorney general doctrine and presents an opportunity for us to clarify the *Stewart* standard. Based on the district court's findings of fact and unchallenged conclusions of law regarding the merits of this case, we conclude that the *Stewart* standard has been met. We are persuaded that the district court erred in concluding that this case involved the "mere interpretation of a[n initiative] petition" and not the "vindication of a strong or societally important public policy" concerning the misuse of the constitutionally-based initiative power and the integrity of a public election. In its decision on the merits, the district court itself recognized that this case implicated the sacrosanct and fundamental right of the people to directly legislate through the constitutional processes of initiative and referenda. It acknowledged the public's "real

and substantial interest in ensuring that the laws of initiative and referenda are scrupulously followed and the election process adheres to the rule of law." The district court's decision on the matter of attorney fees was thus at odds with its original decision in the case. We also conclude that the district court erred in incorporating into the private attorney general doctrine a requirement that a plaintiff somehow show an inability to pay its own attorney fees in order to be eligible for reimbursement under the doctrine, or that a plaintiff show that its burden "was out of proportion to [its] individual stake in the matter." Finally, the district court candidly acknowledged that it was on its own in interpreting the private attorney general doctrine under *Stewart*:

> [This case] is not, in this [c]ourt's view, the extraordinary type of case envisioned by *Stewart*. First of all, there were no monetary benefits created by plaintiff's actions as in *Stewart* nor was there a windfall to [d]efendant. While these factors alone may not be controlling, this Court perceives that the significant monetary benefits related to future rates bestowed by the plaintiff's actions in *Stewart* were an important reason for the [Supreme] Court's decision regarding attorney fees under the "private attorney general" doctrine. Again, there are no such benefits in this case. This [c]ourt cannot even find actual or concrete benefits created in this case.

¶ 10 We hold that the district court's perception that monetary benefits due to a plaintiff's action are required by the private attorney general doctrine is erroneous and not part of the legal standard first articulated in *Stewart*. We also hold that the blocking from the ballot of an unconstitutional initiative petition is an actual and concrete benefit to a large number of citizens and voters, especially in light of the potential costs associated with campaigns to secure or avoid the initiative's passage. We have previously stated, "Because the people's right to directly legislate through initiative and referenda is sacrosanct and a fundamental right, Utah courts must defend it against encroachment and maintain it inviolate." *Gallivan v. Walker*, 2002 UT 89, ¶ 27, 54 P.3d 1069.

Regarding the vindication of this strong and societally important public policy issue, the Oregon Supreme Court recognized that defending the "integrity of the ... initiative process[ ]" benefits all citizens of the State and "is the type of public benefit that ... makes an award of attorney fees appropriate." *Armatta v. Kitzhaber*, 327 Or. 250, 959 P.2d 49, 71 (1998); *see also Umrein v. Heimbigner*, 53 Or.App. 871, 632 P.2d 1367, 1371–73 (1981) (awarding attorney fees under Oregon's version of the private attorney general doctrine because parties exercising the constitutional right to place initiative petitions on the ballot were "protecting the rights of others as much as [their] own" (internal quotation marks omitted)). Vindication of the constitutional rights implicated in this case falls well within the notion of an extraordinary and exceptional case referenced in *Stewart.*

## CONCLUSION

¶ 11 We reverse the judgment of the district court and remand to the district court for a determination as to the proper amount of attorney fees to be awarded. The amount should include attorney fees for the entirety of these proceedings, including both appeals.

¶ 12 Justice DURRANT and Justice PARRISH concur in Chief Justice DURHAM's opinion.

NEHRING, Justice, concurring:

¶ 13 I join in the opinion of the Chief Justice. I write separately to supplement her justification for conducting a nondeferential review of rulings that apply the private attorney general doctrine with the observation that our employment termination jurisprudence provides ample precedent for de novo review of questions that require us to measure the importance of a particular public policy.

¶ 14 In *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033 (Utah 1989), we ratified three exceptions to the employment-at-will doctrine. One of these exceptions may be invoked when an employee is discharged in a manner that transgresses a "substantial and important" public policy. *Id.* at 1043. There is

little difference between evaluating whether a public policy is substantial and important in the context of employment termination and assessing whether an important right affecting the public interest has been vindicated in a private attorney general case. Both considerations call on us to rank matters of public policy among their peers.

¶ 15 Without ever expressly stating our intention to do so, we have unfailingly reviewed public policy challenges in wrongful discharge cases nondeferentially. *See, e.g., Touchard v. La–Z–Boy, Inc.*, 2006 UT 71, ¶¶ 11–16, 148 P.3d 945; *Hansen v. Am. Online, Inc.*, 2004 UT 62, ¶¶ 9–24, 96 P.3d 950; *Gottling v. P.R. Inc.*, 2002 UT 95, ¶¶ 5, 21, 61 P.3d 989; *Rackley v. Fairview Care Ctrs., Inc.*, 2001 UT 32, ¶¶ 10–19, 23 P.3d 1022; *Retherford v. AT & T Commc'ns of the Mountain States, Inc.*, 844 P.2d 949, 958–61 (Utah 1992). Our court of appeals has gone beyond a de facto recognition of this standard and has adopted it outright. *See, e.g., Rackley v. Fairview Care Ctrs., Inc.*, 970 P.2d 277, 281–82 (Utah Ct.App.1998), *aff'd* 2001 UT 32, 23 P.3d 1022. I am unable to discern any principled reason to defer to a trial court's assay of public policy interests in private attorney general cases while declining to do so when reviewing wrongful discharge cases. For this reason and for those set out in the lead opinion, I would conduct a whole record review of the UFBDH attorney fees claim and, having conducted that review, reverse.

¶ 16 Justice DURRANT and Justice PARRISH concur in Justice NEHRING's concurring opinion.

WILKINS, Associate Chief Justice, dissenting:

¶ 17 The essence of the majority opinion in this matter is that our common law rule awarding attorney fees to litigants who act in the public interest should be extended to those who successfully challenge a ballot initiative's inclusion on the ballot. The fact that the litigant may do so for reasons other than the public interest falls out of the equation, as does the financial need of the litigant. My colleagues pronounce the role of preventing the public from voting on a dubious measure

proposed by initiative or referendum to be of such "sacrosanct and fundamental" importance that the court must act to encourage litigation against, in this case, the Davis County Clerk, for failing in his administrative duty.

¶ 18 I, on the other hand, would not.

¶ 19 I would certainly allow those who see unwarranted inclusion of a matter on the ballot to challenge its inclusion, and in instances of improper, unethical, or fraudulent behavior by government officials, encourage the additional incentive of requiring the government to defray the expenses of such an effort. I would reserve that additional incentive for only those few truly extraordinary occasions when a brave citizen takes on government and succeeds against corrupt or wrongful acts, and does so for altruistic reasons, at a personal financial sacrifice. In all other cases, I would let the people vote on the matter.

¶ 20 My colleagues, in this case, elevate a corporate challenge to the flawed initiative petition to a level mandating the award of attorney fees, and do so in language one might reasonably interpret to mean that any such challenge in the future is also entitled to fees, so long as a referendum or initiative effort is successfully removed from the ballot. Such a position places both an unreasonable burden on state and local governments, and substitutes our views of the *importance* of an issue for the view of the voters on the *merits* of the issue. One might reasonably expect all such future petitions to be challenged in court, leaving the bill to be paid by the public treasury.

¶ 21 I disagree with my colleagues, and therefore dissent.