Argued and submitted November 10, 1999, reversed and remanded with
instructions March 15, 2000

## STATE OF OREGON ex rel
## THE ASPEN GROUP, INC.,
*Respondent,*

*v.*

## WASHINGTON COUNTY
## BOARD OF COMMISSIONERS,
comprised of Kathy Christy, Andrew Duyck,
Kim Katsion, Linda Peters and Roy Rogers,
*Respondent,*

*and*

Margery CRIST,
*Intervenor-Appellant.*

(C96-0369CV; CA A105545)

996 P2d 1032

William C. Cox argued the cause for intervenor-appellant. With him on the brief was Gary P. Shepherd.

Ronald T. Adams argued the cause for respondent State of Oregon, ex rel The Aspen Group, Inc. With him on the brief was Black Helterline LLP.

No appearance by respondent Washington County Board of Commissioners.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

WOLLHEIM, J.

Haselton, J., concurring.

**WOLLHEIM, J.**

ORS 215.428(1)[1] requires counties to take final action on land use "permit applications" within 120 days after their filing is "deemed complete." In the event that a county fails to do so, ORS 215.428(7) establishes a mandamus remedy whereby the applicant may obtain an order requiring the approval of the application, unless it is shown that the granting of the application would violate substantive provisions of the county's land use legislation. Relator The Aspen Group, Inc., brought this action under ORS 215.428(7) against defendant Washington County to compel the preliminary plan approval for a subdivision. Although the county planning staff had completed its review of relator's application and had recommended its approval subject to extensive conditions, the county had not progressed beyond that initial stage of its procedures for considering the application, let alone taken final action, by the time the 120-day period elapsed. In the mandamus action, relator effectively sought to require the approval of its application, subject to the planning staff's conditions. The county did not actively participate in the action and effectively conceded the relief sought by relator. Margery Crist (intervenor) was allowed to appear in the action in opposition to relator's application.

After trial, the court issued a peremptory writ, requiring the county to approve the application, subject to the planning staff's conditions and to a number of additional or modified conditions that the court itself imposed, partially in response to intervenor's contentions. Pursuant to ORS 34.210, relator then petitioned for attorney fees from intervenor but did not seek attorney fees from the defendant county. The trial court awarded relator attorney fees of approximately $40,000 against intervenor. Intervenor appealed to this court. We affirmed the trial court's judgment on the merits but reversed and remanded the attorney fee award. Noting that the trial court had failed to exercise its

---

[1] All statutory citations and quotations in this opinion refer to the pertinent provisions that were in effect at the time of the relevant events.

discretion or to apply ORS 20.075(1)[2] in considering the attorney fee petition, we instructed it on remand to apply and to reconsider the award "not inconsistent[ly] with [our] opinion." *State ex rel Aspen Group v. Washington County*, 150 Or App 371, 378, 381, 946 P2d 347 (1997), *rev den* 327 Or 82 (1998).

On remand, the trial court conducted a hearing and awarded attorney fees to relator and against intervenor in the same amount as it had previously, plus nine percent interest from the time of the original attorney fee award that we had reversed. In the present appeal, intervenor contends, *inter alia*, that the trial court abused its discretion in awarding attorney fees against her on remand. We agree and reverse.[3]

We quote at some length from the trial court's oral comments at the hearing on remand:[4]

---

[2] ORS 20.075(1) provides:

"A court shall consider the following factors in determining whether to award attorney fees in any case in which attorney fees are authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b) The objective reasonableness of the claims and defenses asserted by the parties.

"(c) The extent to which an award of attorney fees in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h) Such other factors as the court may consider appropriate under the circumstances in the case."

[3] Intervenor makes two other assignments. One does not require discussion. The other is that the trial court lacked the authority to award interest on the original attorney fee award. Because the putative award of interest is automatically vacated along with our reversal of the underlying award, we need not discuss the assignment separately.

[4] The comments are also embodied, in somewhat edited and shortened form, in the court's written order allowing attorney fees.

"I'll tell you what I wrote down for myself; and, afterwards, if there is anything you want to add, you can tell me about that. I started off with that the [Court of Appeals'] opinion carries the sentence, 'County nonfeasance was the princip[al] reason necessitating the action.'

"In one sense, it was. The County acknowledged this and that it had no intention of defending the action. More importantly, it had already worked its will on the preliminary plan approval and the County was procedurally and substantively satisfied and, therefore, they didn't participate in the case at all. They simply acted to allow the intervenor to intervene if she chose to intervene.

"And, of course, no fees were requested or awarded for the portion of the case that included up to the end of the County's involvement and the beginning of the intervention, which I think was about $2,000 worth, and conceivably they could have been awarded against the County if they had been requested, but they were not.

"However, intervenor then interjected herself and the matter then needed to be litigated. The interjection was meritless and it was a waste of time, and I find that the intervenor was motivated by her desire to stop the project and that the particular matters argued by counsel were no more than spin, as we know that word to be defined out of Washington D.C., to help achieve that end. Intervenor's concern was personal, not public. She was concerned for herself, not others. She brought unreasonable assertions into the matter. Such conduct is deterable and ought to be deterred and an award of attorney fees ought to be awarded to accomplish that.

"For these reasons and others mentioned—and I'm referring to the transcript of the prior hearing—I'm employing my discretion to award the fees I already employed my discretion to award.

"That's where I'm at. And if you want to add anything to that, let me know."

After relator's counsel suggested that it should make some explicit reference to the ORS 20.075(1) factors, the court continued:

"So I think I did address the first one.

"[Relator's Counsel]:   Right, the conduct.

"THE COURT: I did address (a), I did address (b), and I did address (c), and I think I did address (d).

"And (e), I think I have, to some extent, addressed. I'm not totally sure what 'the objective reasonableness of the parties' means. I'm interpreting it to mean the reasonableness of their actions in bringing the matter and in the course of the trial.

"Quite frankly, I thought her trial counsel did a wonderful job with a bad case. So I thought he was just fine, better than just fine. He was a good lawyer. I think I probably mentioned that at the time. But it is a situation where I find that she—her intention was to stop the project. She goes to the lawyer and the lawyer then makes reasons why it might be something stoppable, which is a different proposition than her having real concerns and having those concerns addressed. And I think that either goes to (d), or (d) doesn't mean anything that applies to this matter. On (e)—I mean, that was (e)."

The court then concluded that the other factors in the statute were not pertinent. The trial court made no mention at *this* hearing of the fact that, in its disposition on the merits, it had modified some of the staff conditions in which relator had acquiesced and that intervenor opposed. However, the court incorporated its findings from its earlier award of attorney fees into the present order. In those findings, it had said of the modifications that "all I did was tweak a couple of things we were talking about, whether it was phrased correctly or not."

■ We agree with intervenor that each of the trial court's grounds for awarding attorney fees against her is inconsistent with our earlier opinion or, for other reasons, is incapable of supporting an award under the criteria in ORS 20.075(1). With respect to ORS 20.075(1)(a), concerning "the conduct of the parties * * * that gave rise to the litigation," we said in *Aspen Group*:

"Although [relator] chose to seek attorney fees only from intervenor, the fact remains that the county was a party to this action. It was also the party whose conduct—more than any other's—gave rise to the litigation. It failed to perform its duty of taking final action on the application within the time prescribed by law. Insofar as the county's nonfeasance

was the principal reason necessitating the action, the fact that [relator] has chosen not to claim attorney fees from the *county* does not make the consideration described in ORS 20.075(1)(a) any the less a factor that weighs against an award of attorney fees from *intervenor*. If her conduct contributed to the need for the litigation at all, she was not the sole or main contributor to that need, and the county's contributing conduct was—in the statute's word—'illegal.' "[5] 150 Or App at 379 (emphasis in original; citation and footnote omitted).

At the conclusion of our opinion, we reiterated "that there can *be* no successful mandamus action under [ORS 215.428] unless *the county* has violated the statutory requirement." *Id.* at 380 (emphasis in original). We noted further:

"A mandamus action under ORS 215.428(7) is not a procedure that the legislature established to provide counties with an alternative to making the land use decisions that ORS 215.428(1) and other statutes require. It is a remedy that the legislature created to deal with circumstances where counties have failed to make the decisions that those statutes require them to make." *Id.* at 380 n 7.

We do not agree with the trial court that the county's nonfeasance in failing to comply with the statute was the principal conduct giving rise to the action only in "one sense." As our previous opinion explained and stated, without qualification, the county's failure to comply with the requirements of ORS 215.428(1) was the essential conduct that "gave rise to the litigation," within the meaning of ORS 20.075(1)(a). Indeed, the only thing that *can give rise* to a mandamus action under ORS 215.428(7) is a county's conduct in violating the 120-day rule. The trial court's oral and written comments about the conduct of the parties focused on its perceptions about the way in which intervenor *participated in* the action that relator brought. We will have more to say later about those perceptions in the connections to which they are relevant. However, they are in no way relevant to "conduct * * * in the transactions or occurrences that gave rise to the litigation." Intervenor was not responsible for the events that necessitated the action.[6]

---

[5] In *Aspen Group*, we used the term "plaintiff" to refer to relator.

[6] It is true that intervenor filed an appeal of the planning staff's decision to the next review level under the county's procedures. However, she had the right to do

We also find no basis for shifting that responsibility from the county to intervenor in the trial court's observation that the county chose not to defend the action because it had "already worked its will" through and was "satisfied" with the planning staff's approval conditions. Whatever the trial court understood the meaning and significance of the county's "will" and its "satisfaction" to be, the county had not performed its statutory duty by completing only the initial, planning staff, stage of the application review process, rather than following the public hearing and other review procedures that were prerequisites to its taking "final action" within the meaning and requirement of ORS 215.428(1). Stated another way, the county had no authority to be satisfied with or to work its will through the completion of only part of—let alone only the first part of—the process that ORS 215.428(1) and other state and local provisions required it to pursue to the point of finality.

Moreover, the county's failure to comply with the statute was not only the conduct that gave rise to the action, in the sense of causing relator to seek the judicial remedy rather than await any further untimely action by the county that might be forthcoming. It also caused other deleterious effects, including some that fell directly on intervenor. As we explained in *State ex rel Coastal Management v. Washington Cty.*, 159 Or App 533, 550, 979 P2d 300 (1999), in affirming an award of attorney fees *against* the county:

> "The effect of such a violation [of ORS 215.428(1)], and the resort to the mandamus process that may follow from it, is to subvert the basic land use scheme that the laws of this state establish. It negates the local decisionmaking role and responsibility that the statutes envision; *it excludes local citizens from participation in the decisionmaking process*; it aborts the LUBA review process that is designed to assure the correctness of land use decisions; and it subjects applicants to delay and to the need for and expense of a judicial

that and, more significantly, the 120-day period (along with a three-day extension to which relator had agreed) had expired even before the county planning staff had completed its consideration and made the decision from which intervenor appealed. The planning staff's consideration of an application is the first stage in the county's procedures for reviewing an application. Put bluntly, this was not a case where the county came anywhere close to satisfying the 120-day rule and intervenor's appeal played no part in causing the county's noncompliance.

proceeding to redress the county's unlawful dilatoriness. As noted above, *one of the county's bases for challenging the award of fees is that the 'public did not benefit from being excluded from the land development process.' That statement is quite correct but, insofar as it ascribes the public detriment to relators, it puts the shoe on the wrong foot. The cause of the effect that the county decries was its own failure to comply with ORS 215.428(1)." Id.* at 550 (emphasis added).

In other words, as relevant here, the county's failure to abide by the statutory requirement prevented intervenor from exercising her right to express opposition to relator's proposal through the established county hearing and decisionmaking procedures, as much as it necessitated that relator go to court to have its application acted on rather than obtaining the decision from the county that the county was required by law to make.

■      Relatedly, the trial court's comments to the effect that intervenor was motivated by opposition to and a desire to "stop the project," rather than by some greater public good, provide no basis for an award of attorney fees against her. Had the county conducted the proceedings it was required to conduct, intervenor would have had the right to express opposition to the county decisionmakers, whatever her motives may have been. Similarly, her motives, in themselves, are irrelevant to whether attorney fees should be awarded in this action. It is completely possible for a party to make an objectively reasonable—or even compelling—case against a public action that the party opposes solely for personal motives. The merits of a party's position are not intrinsically dependent on or diluted by the reasons why the party chooses to assert the position. We have held that a relator's promotion of a "broader public benefit" is germane to whether the relator should be awarded attorney fees *from* a public entity in a mandamus action. *State ex rel Pend-Air v. City of Pendleton*, 145 Or App 236, 929 P2d 1044 (1996), *rev den* 325 Or 45 (1997); *see also Coastal Management.* However, we are aware of no authority that supports the proposition that the absence of a desire to serve a public purpose or benefit is a ground for assessing fees *against* a private party in a mandamus action.

■     The trial court's comments about intervenor's motives were interspersed with, and were perhaps commingled in its own view, with the court's statements to the effect that intervenor's arguments and presentation in the mandamus action were without merit. The presentation of a meritless case, of course, would be a consideration that would support an award of attorney fees under one or more of the factors in ORS 20.075. However, the trial court's conclusion that attorney fees should be awarded here, on the basis of the supposed meritlessness or unreasonableness of intervenor's contentions, is both inconsistent with our earlier opinion and contradicted by the fact that the trial court itself modified the county staff's conditions in response to intervenor's arguments.

■     We said in *Aspen Group*:

"Plaintiff appears to argue that the court's modifications of the approval conditions were *de minimus*. That may or may not be so, but it is of no significance. The object of ORS 20.075(1)(c) is to avoid the deterrence of good faith claims or defenses and, on the other side of the coin, the object of subsection (1)(d) is to deter the assertion of meritless claims and defenses. A claim or defense need not be one that inflicts humiliating and total defeat on the opposition in order for it to qualify under the good faith criterion and to avoid the 'meritless' label. Intervenor does not claim to be the prevailing party and she is not *seeking* attorney fees; she is seeking to avoid them and, under ORS 20.075(1)(c) and (1)(d), the fact that plaintiff came away from the action with *anything* less than it sought militates in intervenor's favor." 150 Or App at 351-52 (emphasis in original).

We adhere to that view. The trial court's description of its modifications as mere "tweaking" does not alter the facts that they pertained to matters of fundamental importance (*e.g.*, emergency access and traffic considerations), and the county's abdication of its statutory duty left no forum other than the trial court where intervenor could address those matters and no forum other than the trial court that could rectify the problems in the planning staff's conditions as they stood.

In sum, we find no basis in the trial court's oral or written findings to support its conclusion that an award of

attorney fees was justified under any of the provisions in ORS 20.075(1) that it cited. Further, we conclude that, on the record before us and in light of our earlier opinion, *at least* the considerations that arise under paragraphs (a), (b) and (c) of that statute affirmatively militate *against* an award of attorney fees to relator from intervenor. As a matter of law, (1) the conduct that gave rise to the action was that of another party, the county; (2) intervenor's defenses were objectively reasonable, insofar as they contributed to the trial court's modification of the planning staff's approval conditions that were embodied in the relief that relator sought; and (3) an award of attorney fees against intervenor in this case would serve to deter other citizens from participating in good faith in mandamus actions that are necessitated by the failure of local governmental authorities to perform their statutory land use decisionmaking responsibilities. We accordingly hold that the trial court acted beyond the permissible scope of its discretion, as well as inconsistently with our first opinion, in awarding attorney fees against intervenor on remand. Further, given the record with the added illumination of the proceedings on remand, we are persuaded that no award of attorney fees against intervenor could be justified under the criteria in ORS 20.075(1).

Reversed and remanded with instructions to deny petition for attorney fees.

**HASELTON, J.,** concurring.

I write separately to express my view that the error here was, in large part, of our own making.

In *Aspen Group I*, in which I joined, we remanded for reconsideration of the fee award. In doing so, we necessarily implied that, on these facts, under ORS 20.075(1), the trial court might possess some discretion to award fees. We were wrong in that regard. In fact, as the majority demonstrates, the only legally permissible exercise of discretion was, and is, to deny fees.

Appellate hindsight, even more than most, is 20/20. Nevertheless, the proper result in *Aspen Group I* should have been an outright reversal.