Argued and submitted February 28, supplemental judgment reversed as to
allowance of attorney fees payable by intervenor;
otherwise vacated and remanded for reconsideration June 14, 2006

## In the Matter of the Marriage of

Shari Joyce NIMAN,
nka Shari Joyce Clark,
*Respondent,*

*and*

Dennis Vincent NIMAN,
*Appellant,*

*and*

Lucille NIMAN,
*Intervenor - Appellant.*

0105-64899; A124826

136 P3d 1186

See also, 206 Or App 259, 136 P3d 105.

Philip F. Schuster, II, argued the cause for appellant. With him on the briefs was Dierking & Schuster.

Craig Wymetalek argued the cause for intervenor - appellant. With him on the opening brief was Stahancyk, Gearing, Rackner & Kent, P.C. On the reply brief was Gearing, Rackner & Engel LLP.

Jacqueline L. Koch argued the cause for respondent. With her on the brief was Koch & Deering.

Before Haselton, Presiding Judge, and Edmonds and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Husband and intervenor, his mother (hereinafter grandmother), appeal from a supplemental judgment, assigning error to the allowance of wife's petition for attorney fees. In addition, husband assigns error to the denial of his petition that sought fees from wife. Wife initially moved to modify a judgment of dissolution of marriage in order to allow her to move with the parties' children to Minnesota. ORS 107.135. Husband objected to the modification. Grandmother intervened. ORS 109.119. Although wife ultimately abandoned her motion to modify, the trial court, in its discretion, ordered husband and grandmother to pay wife's attorney fees. ORS 107.135(8); ORS 109.119(7)(b); ORS 20.075(1). We vacate the supplemental judgment and remand for reconsideration of both wife's fee petition and husband's cross-petition for fees. We further reverse the allowance of attorney fees against grandmother.

This case is a companion case to *Niman and Niman*, 206 Or App 259, 136 P3d 105 (2006) (*Niman I*). As noted, this case arises in the context of an attempt to modify a dissolution judgment. In *Niman I*, husband separately appealed the underlying dissolution judgment as well as a subsequent but related contempt judgment, which antedated the proceedings and dispositions at issue here. Nevertheless, some aspects of the two cases—and, particularly, the proper characterizations of husband's conduct giving rise to the contempt judgment challenged in *Niman I*, which, in turn, was material to the award of fees in this case—are inextricably intertwined. Accordingly, as will become apparent, our analysis in this case incorporates substantial aspects of the companion case's treatment of the contempt judgment.

In this case, the following facts are uncontroverted. Husband and wife were married in 1992. They have two children. In 2001, wife petitioned for dissolution and, on December 18, 2002, after a trial, the Multnomah County Circuit Court entered a judgment of dissolution of marriage.

The dissolution judgment awarded sole custody of the children to wife as the primary caregiver, subject to specific parenting time awarded to husband. The judgment also

ordered husband to pay certain monetary amounts: $848 in monthly child support ($565 of which represented the "guidelines child support" amount, and $283 for one half of the children's private school tuition); $1 in nominal spousal support; $2,048 in support arrearages, accrued in November and December 2002; and a $277,732 equalizing judgment to be paid over the next year at nine percent interest. In addition, husband was ordered to secure the equalizing judgment by signing a trust deed on property he owned.[1]

In December 2002, at about the time that the dissolution judgment was entered, wife learned that her employment status was uncertain. Wife, a member of the Oregon State Bar, was employed as a facilitator in a circuit court family law self-help center. She received a memorandum informing her that, because of impending budget cuts, her position was in jeopardy. Wife began "networking" to see if she could find other employment if she lost her job, but had little success.

Meanwhile, as recounted in *Niman I*, husband was not paying any of his monetary obligations under the dissolution judgment. Husband refused to pay the child support obligation, as well as the $1 in nominal spousal support. In addition to the nonpayment, husband refused to sign the trust deed to secure the equalizing judgment. *Niman I*, 206 Or App at 265.

Accordingly, on February 10, 2003, wife filed a motion for an order to show cause why husband should not be held in contempt. After wife filed her motion, husband began voluntarily paying the $565 child support payments (the portion representing the guidelines child support amount). He also caught up on the previous months' $565 payments. Regarding the remaining obligations, husband filed a response, affirmative defense, and counterclaim to wife's motion.

As detailed in *Niman I*, husband contended that he could not be held in contempt for noncompliance with the dissolution judgment because satisfaction of his obligations under that judgment would, as a matter of law, "waive" his

---

[1] As noted, in *Niman I*, husband appealed the dissolution judgment.

ability to prosecute his pending appeal of that judgment. *See Niman I*, 206 Or App at 276-77. As support for that proposition, husband invoked *Kelly v. Tracy*, 209 Or 153, 305 P2d 411 (1956), as well as statements allegedly made by his appellate counsel. *See id.* Husband did *not* argue to the trial court—as he did later on appeal in *Niman I* and does in this appeal—that, regardless of whether he was actually, legally required to perform various obligations under the dissolution judgment during the pendency of the appeal, he could not be held in contempt because he held a "good faith belief" that he was legally excused from performing those obligations. *Id.* at 276. As we explained in *Niman I*:

> "In his responsive pleading in the contempt proceeding, husband alleged separate affirmative defenses with respect to each specification of contempt in which he identically asserted that his performance of the obligation 'would be deemed an action inconsistent with [husband's] assignment of error and hence a waiver.' In other words, husband's defense before the trial court was based on the legal position that performance of the disputed obligations would amount to a waiver of his appeal rights. He did not allege in his pleading, nor did his attorney argue, that regardless of whether his legal position was correct, he acted on a good faith belief that it was. At the contempt hearing, husband testified that his appellate counsel had confirmed the correctness of his position; however, he testified that he had 'already figured that out for [himself].' Moreover, his testimony was given in the context of his ultimate assertion that he did not have 'any choice in the matter, if I wish to appeal those items.' "

*Id.* at 276-77 (brackets in *Niman I*).

After a hearing on May 5, 2003, the court found husband to be in "willful contempt" of the 2002 dissolution judgment; on June 17, 2003, the court entered a post-dissolution judgment holding husband in contempt. That judgment required husband to pay his obligations and sign the deed by the end of the month. The judgment imposed a fine of $500 per month as a remedial sanction for any month in which husband failed to perform his obligations. *Niman I*, 206 Or App at 265. Husband appealed, challenging that contempt judgment, and, in *Niman I*, we rejected that challenge. *Id.* at 276-79.

On May 23, 2003, wife filed a motion to modify the dissolution judgment. That motion precipitated the proceedings that culminated in the supplemental judgment challenged in this appeal. Specifically, wife's motion requested a modification of the parties' "parenting time schedule to accommodate [wife's] move to Minnesota[,]" where her family lived. Wife's motion also alleged an entitlement to attorney fees incurred in litigating the proposed modification. In her supporting affidavit, wife explained her motivations for the putative move:

"a.   Financial constraints. * * * Because [husband] has not paid the amounts ordered, I am unable to make ends meet. My income was reduced due to budget cuts, and my position at the courthouse is at risk of being eliminated. If I move to Minnesota, the boys and I will be able to live with my parents for a time until I become financially secure. * * *

"b.   [Husband] continues to engage the boys in negative interactions during his parenting time. He continues to criticize the school the boys attend, and continues to share all information about the litigation with the boys rather than sheltering them from the conflict.

"c.   One important element of the boys' stability is ending. [Their private school] will not be offering classes beyond kindergarten beginning fall of 2003 because of a lack of financial support. Although there are other educational opportunities available for the children in Portland that I am exploring, they will have to change to a new school in fall 2003. The educational system in Minnesota has an excellent financial base and has very highly rated schools near my parents' home.

"d.   [Husband] has deliberately acted to impair my ability to find employment as an attorney in Oregon. He filed an extensive complaint against me with the Oregon State Bar. Although the Disciplinary Counsel determined his allegations to be unfounded, I am professionally compromised by the fact of his complaint.

"e.   Moving to Minnesota will better meet the boys' needs by continuing their regular contact with [husband], though the scheduling of that time will have to change.

They already have a very strong bond with their grandparents and other family members in Minnesota who have visited regularly since their births. I am confident that I will have better employment opportunities in Minnesota, and I have begun a job search there."

Husband filed a response to wife's motion, as well as his own motion to modify.[2] He denied the allegations against him and asked the court to deny wife's motion to move or, in the alternative, to grant custody and child support to him, thus allowing wife to move but with the children remaining in Oregon. As he explained in his supporting affidavit, he believed that, because of the children's strong familial and social ties, a move to Minnesota would not be in their best interests. In addition—and with particular relevance to our analysis below of the parties' present attorney fee dispute—husband contended that wife's stated motivations for the move were disingenuous:

"[Wife] claims that for economic reasons, she must relocate. I believe that she is carrying out her intentions that were initially made known to me at the time of our separation."

After husband filed his response and motion, grandmother filed a motion to intervene and a petition for visitation rights with the children. *See* ORS 109.119. Specifically, grandmother sought to secure a personal visitation right "if [wife] is allowed to modify the parenting time schedule to accommodate the move to Minnesota[.]"

Between July and September 2003, the trial court held numerous hearings on the parties' motions. At the conclusion of those hearings, the trial court awarded attorney fees to wife against both husband and grandmother. The circumstances that underlay, and culminated in, the fee awards were convoluted—and, indeed, somewhat confusing. Nevertheless, we discern, and distill, the essential circumstances as follows:

---

[2] In addition to his motion to modify, husband asked the court to reduce his ongoing child support obligation. Because the children were no longer enrolled in private school, husband argued that his future obligations should be reduced. The court eventually granted that request, and the substance of that motion is not at issue in this appeal.

First, the court addressed grandmother's motion to intervene. Pursuant to ORS 109.119, grandmother's participation involved two inquiries. In order to intervene, grandmother needed to show an "ongoing personal relationship" with the children. ORS 109.119(1). Once allowed to intervene, grandmother, to be entitled to judicially ordered visitation, would be required to make a further showing rebutting, by clear and convincing evidence, the statutory presumption that wife, in seeking to move with the children, was acting in the best interests of the children. ORS 109.119(2)(a); ORS 109.119(3)(b). The trial court allowed grandmother's motion to intervene, concluding:

"I'm allowing the intervention partly because I believe the same issues would properly be subject to presentation by [husband]. It is not conceivable to me that it would be inappropriate for the Court in considering [wife's] request to move, [to consider] the impact that may have on other significant relationships of the children that are here [in Oregon]. And I would have anticipated that [husband's attorney] would, in essence, present those facts and arguments at any rate, so I don't see this as really adding much time to the trial. There's always more time—I don't know that it address[es] any new issues."

Having allowed grandmother to participate, the court heard the motions to modify.[3] Wife established that, since the time of the contempt order, husband had never paid any of his obligations other than regularly making monthly child support payments of $565. Husband had never fully satisfied the child support arrearages or paid spousal support; nor had husband made any payments on the equalizing judgment or paid the $500 per month remedial contempt sanction. Wife reiterated that her primary motivation for seeking modification so that she could move with the children to Minnesota was to alleviate the financial burden that husband had created through his nonpayment. Wife contended that, in Minnesota, she would be able to live with her parents and reduce her expenses dramatically. In addition, she believed she would be able to find suitable employment there

---

[3] At some point in the proceedings, husband also moved to dismiss. That motion was denied, and that disposition is not disputed on appeal.

that would allow her to support the children while still spending time with them.

Husband countered that wife's motivations were insincere and that, in any event, a move to Minnesota would not be in the best interests of the children. Specifically, he attempted to show that wife had not diligently attempted to find employment in Oregon. Husband also presented evidence that the children had close bonds with him and with their family and neighbors in Oregon.

For her part, grandmother participated by examining various witnesses and by herself testifying as a witness. As did husband, grandmother attempted to discredit wife's motivations and to show that wife's decision to move was not in the best interests of the children. Grandmother's own testimony focused primarily on her relationship with the children.

The trial court initially, albeit tentatively, agreed with husband and grandmother regarding the children's best interests. Conversely, the court initially, albeit tentatively, disagreed with them about mother's motivations. In September 2003, the court proposed a temporary solution and retained jurisdiction to make a final decision at a later date:

> "I am not convinced it is in [the children's] best interests to allow a move at this time, in part because the Court intends to enter an order that will alleviate [wife's] immediate financial distress, and that is the primary reason that she has given the Court that she needs to move. I'm going to retain jurisdiction and review this in three months * * *. I'm going to order [husband] to pay $1500 a month of the equalizing judgment[.]

> "My review of [wife's] Uniform Support Affidavit indicates that she is sustaining about a $500 gap between her income and her expenses. It's this Court's view if that is alleviated, that the immediate primary reason for the move is alleviated. I am reserving the right to reconsider her request [in three months] and that will be based upon review of her economic circumstances at that time."

The court then issued a "Temporary Order" memorializing its conclusions from the hearing, which provided, in part:

"IT IS ORDERED:

"1.    [Wife's] Amended Motion to Modify [husband's] parenting time to accommodate [wife's] move to Minnesota is denied pending further review * * *.

"2.    [Husband's] Motion to change custody and be granted an award of child support is denied pending further review * * *.

"* * * * *

"4.    Paternal Grandmother's Motion to Intervene is granted, however, her request for a grandparent visitation schedule is denied pending further review * * *.

"* * * * *

"6.    [Husband] shall pay [wife] $1,500 per month * * * with those payments credited toward the equalizing judgment awarded [wife] in the Judgment of Dissolution of Marriage * * *."

The parties came before the court again in January 2004. At that time, husband had not made any payments on the equalizing judgment or any payments on the other contested obligations. Nevertheless, wife had decided not to move to Minnesota. As her attorney explained:

"[Wife] has decided that she will not pursue her motion to modify [husband's] parenting time in order to allow her to move to Minnesota. She has decided that, despite her inability to find another better paying job, and despite [husband's] failure to pay the $1500 that was ordered in that temporary order, she is going to stay here for the time being."

The parties agreed that the remaining motions, with the exception of father's motion to reduce his child support obligation, were made moot by the retraction of wife's motion to modify. The court subsequently entered a supplemental judgment as follows:

"1.    [Wife's] * * * Amended Motion to Modify [husband's] Parenting Time * * * is moot.

"2.    [Husband's] * * * Motion to change custody and be granted an award of child support * * * is moot.

"3. [Husband's] Motion to Modify his child support obligation is granted.

"4. Paternal Grandmother's Motion to Intervene has previously been allowed, however, her Petition [for visitation] is now moot.

"5. [Husband's] Motion to Dismiss * * * is denied.

"* * * * *

"8. *Each party may submit a Petition for attorney fees under ORCP 68 related to the motions listed above.*

"9. This Supplemental Judgment supercedes the [previous] Temporary Order * * *."

(Emphasis added.)

Wife, husband, and grandmother all submitted petitions for attorney fees. The court and the parties agreed that "it [was] * * * within the discretion of the Court whether or not to award attorneys' fees." Consequently, the parties' arguments with respect to fee entitlement were framed by reference to the factors identified in ORS 20.075(1).[4]

---

[4] ORS 20.075 provides, in part:

"(1) A court shall consider the following factors in determining whether to award fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b) The objective reasonableness of the claims and defenses asserted by the parties.

"(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"* * * * *

"(h) Such other factors as the court may consider appropriate under the circumstances of the case."

Wife's principal argument was that husband's "willful" conduct in refusing to pay his obligations under the dissolution judgment "gave rise to the litigation." ORS 20.075(1)(a). That is, but for husband's contumacious failure to pay his obligations, wife would not have experienced the financial distress that precipitated her motion to modify.

Husband reiterated his position, originally asserted in defense to the contempt proceeding, *see* 206 Or App at 403-04, that his conduct was not contumacious.[5] Again invoking *Kelly* and the statements of his appellate lawyer, husband claimed that paying the disputed portions of the dissolution judgment would have waived his ability to challenge on appeal those aspects of the judgment. In addition, husband argued that wife's purported motivations for the modification were disingenuous—that is, that wife's desire to live with her family was the product of personal desire rather than financial necessity. In sum, husband contended that his conduct was justified, and that, even if it was not, that conduct did not actually "[give] rise to the litigation." Significantly, as in the contempt proceedings, *see Niman I*, 206 Or App at 276-77, husband did *not* contend alternatively that, regardless of whether his noncompliance was legally justified, a subjective good faith belief or reliance on the advice of counsel rendered that noncompliance non-"willful" or not in "bad faith" and, thus, inapposite to ORS 20.075(1)(a).

The trial court denied husband's fee petition and granted wife's petition for fees against husband:

"[Wife] responded to [husband's] contemptuous behavior of * * * fail[ing] to pay the judgment in a reasonable way. [Wife] found herself in difficult economic circumstances because [husband] has chosen to ignore and defy the Court's orders that he pay some portion of the equalizing judgment, that he pay child support as ordered.

"* * * * *

---

[5] Throughout the trial record, the parties and the court referred to husband's conduct as having been "contemptuous." With respect, it appears that the proper term is "contumacious." *See Black's Law Dictionary* 315 (8th ed 1999) (defining "contumacious conduct" as "[a] willful disobedience of a court order"); *id.* at 354 (defining "contumacy" as "[c]ontempt of court; the refusal of a person to follow a court's order or direction"). Consequently, we use that term in this opinion, except in material quoted directly from the transcripts and other trial records.

"*Under ORS 20.075, the Court is to consider the objective reasonableness of the claims and defenses asserted by the parties, the conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal. And I certainly think conduct in contempt of court comes under that general heading, the objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceeding, the objective reasonableness of the parties and the diligence of the parties in pursuing settlement.*

"I find, as I said before, that [wife] was genuinely concerned about her [economic situation] and she did not receive * * * the full amount of support that the Court had ordered. In response and out of concern for her and her children, she looked into the possibility of moving to where she could survive economically.

"It is true that I ultimately concluded that was not in the best interests of the children. But I don't find any part of [wife's] response to that situation created by [husband's] contempt to have been unreasonable. * * *

"* * * * *

"I just can't emphasize it enough. *I'm completely convinced that motion for a move to Minnesota never would have happened if [husband] would have obeyed Court orders.*"

(Emphasis added.)

Turning to grandmother's alleged entitlement to, or liability for, attorney fees, the trial court stated that grandmother's participation in the proceedings had been unreasonable. In particular, the court observed that, in intervening, grandmother had not merely sought to secure visitation rights but had also joined in husband's opposition to the putative move:

"She joined her interests to [husband's] in the course of this proceeding * * * to fully support his positions, and I'm finding that there's a commonality to their positions and that by doing that—I mean, [wife] is the one who has been forced to incur all of these expenses as a result of [husband's] contemptuous behavior. [Grandmother] came in and joined herself to [him] in his positions before this Court *opposing*

*the move, not simply asking for visitation if the move came
about, but opposing the move—*

"* * * * *

"* * *—which is saying to the judge: I want you to force
[wife] to stay here and deal with the economic distress that
my son has occasioned * * *."

(Emphasis added.)

Grandmother argued, nevertheless, that it was husband's conduct (in failing to perform his obligations under the dissolution judgment)—and not any action by grandmother—that the court had deemed contumacious. That is, grandmother argued that she should not be required to "pay [ ] for the sins" of husband. The court disagreed:

"[Grandmother] joined her interests with [those] of her son. She took a position in opposition to [wife's] move to Minnesota and in all respects, her position was the same as [husband's]. And, in essence she too then, in joining her interests with [husband's], was attempting to force [wife] to deal with the situation that, as I said, was created by [husband's] contempt."

Based on that reasoning, the court determined that wife was entitled to recover fees against grandmother and denied grandmother's cross-petition against wife.

Having concluded that wife was entitled to recover fees against both husband and grandmother, the court ultimately determined that wife's total recoverable fees were $24,000.[6] The court then considered, and fixed, the apportionment of fees between husband ($21,153) and grandmother ($2,847).

That apportionment is embodied in a supplemental judgment entered on May 4, 2004. In that supplemental judgment, and consistently with *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 187-88, 957 P2d 1200 (1998), the court identified the bases for its fee awards. With respect to the award against husband, the court referred to four factors listed in ORS 20.075(1): "The conduct of the parties in the transactions or occurrences that gave rise to the litigation,"

---

[6] In her petition, wife had requested an award of $25,785.02.

ORS 20.075(1)(a); "[t]he objective reasonableness of the claims and defenses asserted by the parties[,]" ORS 20.075(1)(b); "[t]he objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings[,]" ORS 20.075(1)(e); and "[t]he objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute[,]" ORS 20.075(1)(f). The supplemental judgment explicitly incorporated the court's reasoning as expressed at the fee hearing and reiterated the court's determination that "[husband's] stated justification for not paying the ordered money judgments is without sound legal basis[,]" and that "[wife's] action of filing for a modification * * * was caused by a situation [husband] created by his failure to abide by court orders."

With respect to the award against grandmother, the court crafted the language of the supplemental judgment with deliberate care. Wife's proposed form of judgment included a paragraph stating that grandmother's conduct at trial was "contemptuous," "in bad faith," and "objectively unreasonable." When grandmother objected to that language, the court agreed:

"With respect to [grandmother], let me be clear. I don't consider her conduct contemptuous, but it's quite another thing to impose upon [wife] the expenses of dealing with her joining in [husband's] efforts to resist the move[.] * * *

"I'm not specifically finding that she has engaged in contemptuous conduct, but she has come into this proceeding and caused [wife] legal fees that are secondary to [husband's] contemptuous behavior, and in doing so, in this Court's view she joined her interests to his."

The court then modified the proposed supplemental judgment so as to eliminate any finding that grandmother's conduct had been contumacious or unreasonable, or that she had acted in bad faith. Instead, the final judgment provides that "[b]y taking a position in support of [husband's] position, [grandmother] joined her interests to his, and thus bears responsibility for the cost and attorney fees made necessary by his contemptuous and unreasonable conduct."

On appeal, husband and grandmother both challenge the court's awards of fees to wife. In addition, husband assigns error to the denial of his fee petition.

We first consider the propriety of the fee award against husband. The basis of that award was ORS 107.135(8), which provides:

> "In a proceeding under subsection (1) of this section [allowing modification of a judgment of dissolution], the court *may* assess against either party a reasonable attorney fee and costs for the benefit of the other party. If a party is found to have acted in bad faith, the court shall order that party to pay a reasonable attorney fee and costs of the defending party."

(Emphasis added.) Here, given the trial court's explicit reference to, and reliance on, ORS 20.075(1)—which, by its terms, applies only to cases involving a discretionary entitlement to fees—it is apparent that the court predicated the award upon the first sentence of ORS 107.135(8). That is, if the court had relied on the second (mandatory) sentence, rather than the first (discretionary) sentence, there would have been no need to refer to ORS 20.075(1) and its criteria circumscribing the court's exercise of discretion with respect to fee entitlement.

With that understanding, and before considering the substance of husband's arguments, we next address the applicable standards of appellate review. We review a discretionary award of attorney fees under ORS 20.075(1) for abuse of discretion. ORS 20.075(3); *Nieth and Nieth*, 199 Or App 330, 332, 111 P3d 746, *adh'd to on recons*, 200 Or App 582, 116 P3d 234 (2005) (applying abuse of discretion standard to the first sentence of ORS 107.135(8)). However, the proper exercise of discretion may be predicated on the trial court's determinations of questions of law or fact—and those determinations, in turn, may implicate independent standards of review. For example, in this case, the determination whether the parties' claims or defenses were "objectively reasonable," ORS 20.075(1)(b), is a question of law. *Secor Investments, LLC v. Anderegg*, 188 Or App 154, 175, 71 P3d 538 (2003). Conversely, whether husband's conduct "gave rise to the litigation," *see* ORS 20.075(1)(a), is a question of fact. *Shumake*

*v. Foshee*, 197 Or App 255, 261, 105 P3d 919 (2005). Although we review predicate legal conclusions for errors of law, *id.*, our standard of review for factual determinations underlying attorney fee awards varies according to the nature of the dispute.

In *Shelton and Shelton*, 196 Or App 221, 233-34, 100 P3d 1101 (2004), *adh'd to on recons*, 197 Or App 391, 105 P3d 944 (2005), we explored the proper standard of review for the underlying factual determinations of a fee award in a domestic relations case:

> "The parties * * * debate the standard of review that we should apply [in this case]. Father argues that we should apply a *de novo* standard of review to any factual findings related to attorney fees, just as we apply a *de novo* standard of review to other factual findings in domestic relations cases. * * * Mother contends that we should review trial court 'decisions' on attorneys fees for abuse of discretion.

> "We first observe that 'abuse of discretion' is never an apposite standard of review for findings of fact. 'Discretion' refers to the authority of a trial court to choose among several legally correct outcomes, and accordingly 'abuse of discretion' is a standard of review that applies only to certain legal rulings, never to factual findings. It appears that the question of the correct standard of review to apply to findings of fact underlying decisions on whether to allow attorney fees is a question of first impression. Whether we would review those findings *de novo*, because this is a domestic relations case, or defer to the trial court's findings is an interesting question[.]"

*Id.* (citations omitted). However, we did not resolve that "interesting question" in *Shelton* because we determined that the case involved only questions of law. *Id.*

In *Shumake*, decided the year after *Shelton*, we resolved an analogous issue, and our reasoning in that case is instructive here. In *Shumake*, which arose from a nonequitable civil action, the defendant challenged an award of an enhanced prevailing party fee pursuant to ORS 20.190(3). 197 Or App at 259. ORS 20.190(3) closely parallels ORS 20.075(1) in that it allows a court, in its discretion, to award an enhanced prevailing party fee upon consideration of the

same eight factors listed in ORS 20.075(1).[7] After noting that we would review the "ultimate decision to award—or not to award—the fee" for abuse of discretion, 197 Or App at 260-61, we addressed the proper standard of review with respect to findings of fact pertaining to the statutorily prescribed factors:

> "Some of those factors involve findings of fact concerning the conduct of the parties during the course of the proceedings. *E.g.*, ORS 20.190(3)(a) ('The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, [or] in bad faith[.]'). *We will review those findings as we usually review findings of fact in nonequity civil proceedings—that is, for any evidence.*"

*Id.* at 261 (citations omitted; emphasis added; brackets in original).

■ Thus, in *Shumake*, we concluded that the same standard of review applicable to other factual findings in nonequity civil cases should apply to those factual findings that underlie discretionary fee awards. By parity of reasoning, the *de novo* standard of review should govern findings of fact underlying fee awards in domestic relations cases—in which findings of fact are, of course, generally subject to *de novo* review. Accordingly, we engage in *de novo* review with respect to the facts material to the award of attorney fees in this case.

■ We turn then to husband's challenges to the predicates for the trial court's determination, pursuant to ORS 20.075(1), of wife's entitlement to fees under ORS 107.135(8).[8] The court's written judgment identified four factors under ORS 20.075(1)(a) that guided its discretion in

---

[7] Some of the eight factors in ORS 20.190(3) are necessarily worded differently from the corresponding provisions of ORS 20.075(1). Those differences are immaterial to our analysis.

[8] We reject, without extended discussion, husband's contention that wife's ultimate withdrawal of her motion to modify effectively prevented her from recovering fees. Husband does not contend that the "mooting" of wife's motion deprived the trial court of jurisdiction to award fees. Rather, citing *Atiyeh v. State of Oregon*, 326 Or 531, 956 P2d 177 (1998), he contends that because the mooting of wife's motion "prevented Wife from seeking a determination that the [court's temporary order] was incorrect on the merits[,]" it would be "inequitable" to award fees.

awarding fees against husband: the conduct giving rise to the litigation, the objective reasonableness of the parties' claims or defenses, the objective reasonableness and diligence of the parties during the proceeding, and the parties' objective reasonableness and diligence in pursuing settlement. *See* ORS 20.075(1)(a), (b), (e), and (f). In invoking and applying those factors, the court referred *only* to the circumstances of husband's allegedly contumacious conduct, which, in the court's view, precipitated wife's motion to modify. *See* 206 Or App at 411-12, 413-14.

Under ORS 20.075(1)(a) the court is to consider the "conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct * * * that was reckless, willful, malicious, in bad faith or illegal." In invoking that factor, the trial court necessarily found that (a) husband's failure to perform his obligations under the judgment was "reckless, willful, malicious, in bad faith or illegal"; and (b) that conduct actually "gave rise" to the modification proceedings.

Husband contends that the trial court's application of ORS 20.075(1)(a) was erroneous for any of three reasons. *First*, again invoking *Kelly*, husband contends, as he has consistently, that his failure to perform his obligations under the dissolution judgment was legally justified and, thus, that conduct cannot militate in favor of an award of attorney fees. *Second*, husband argues that, regardless of whether his noncompliance was legally justified, that conduct did not support an award of fees because he acted in good faith based on his understanding of legal authority and the advice of counsel. *Third*, husband contends that, in all events, his noncompliance did not, as a factual matter, "[give] rise to" wife's modification motion. Rather, husband contends, wife's purported economic distress was a sham, and her real reason for seeking the modification was to satisfy her selfish personal desire to return to Minnesota.

---

*Atiyeh* is inapposite. There, the asserted entitlement to fees depended on the idiosyncratic requirements of the "public benefit" doctrine recognized in *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975). Here, in contrast, wife's asserted entitlement to fees rests on ORS 107.135(8) and the application of the "discretionary entitlement" factors prescribed by ORS 20.075(1).

*Niman I* disposes of husband's first, "legal justification" contention:

"[H]usband could have performed his obligations under protest, that is, involuntarily, without waiving his appeal rights. Payment of a judgment will not preclude an appeal unless the payment was voluntary, not coerced, and made with a view of settlement. *Cottrell et ux. v. Prier et ux.*, 191 Or 571, 573, 231 P2d 788 (1951)."

206 Or App at 277.

Husband's alternative "good faith" reliance contention suffers from the same defect that we identified in *Niman I*: It is raised for the first time on appeal. *See Niman I*, 206 Or App at 276. Here, as in *Niman I*, husband's sole argument to the trial court was that his noncompliance was legally justified. He did not contend that, in all events, he had acted in good faith reliance on his understanding of legal authority and advice of counsel. In sum, husband's position has undergone a material metamorphosis from trial to appeal.

That belated shift in position precludes consideration of husband's present contention. If husband had raised that contention before the trial court, the record might well have developed very differently, particularly with respect to the circumstances and content of the advice that husband allegedly received from his attorney.[9] Further, husband's present assertion of subjective good faith necessarily implicates his credibility, and the trial court was never afforded the opportunity to render a finding on husband's credibility in that regard. Accordingly, we decline to address the substance of husband's second contention. *See J. Arlie Bryant, Inc. v. Columbia River Gorge Comm.*, 132 Or App 565, 568, 889 P2d 383, *rev den*, 321 Or 47 (1995) (describing record development rationale underlying preservation requirements); *accord Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) (stating corollary proposition with respect to consideration of alternative bases for affirmance raised for the first time on appeal: "[I]f the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could

---

[9] Husband's attorney did not testify in the attorney fee proceedings.

affect the disposition of the issue, then we will not consider the alternative basis for affirmance." (Emphasis in original.)).

Husband's third and final contention with respect to the application of ORS 20.075(1)(a)—*viz.*, that wife's stated motivations for bringing her motion to modify were disingenuous, and that, in fact, husband's nonpayment did not give rise to the litigation—also fails. Here, the trial court, after observing wife's testimony, was "completely convinced" that wife's stated motivations were accurate. Because the question of wife's motivation for pursuing the modification motion is factual, we review *de novo*. In doing so, however, we give "great weight" to a trial court's findings concerning demeanor-based credibility. *Preferred Funding, Inc. v. Jackson*, 185 Or App 693, 699, 61 P3d 939 (2003). Consistently with that standard, and based on our *de novo* review of the record, we affirm the trial court's determination that husband's contumacious conduct did, in fact, "[give] rise" to the modification proceedings. Accordingly, the trial court did not err in concluding that, under ORS 20.075(1)(a), that conduct militated in favor of an award of fees to wife.

We proceed to the second entitlement factor in the supplemental judgment, *viz.*, the "objective reasonableness of the claims and defenses asserted by the parties." ORS 20.075(1)(b). In invoking that factor, the trial court appears—again—to have relied solely on husband's conduct that caused wife to file the motion to modify. In doing so, the court erroneously conflated the inquiry under paragraph (1)(b) with that under paragraph (1)(a). Although paragraph (1)(a) pertains to the conduct giving rise to the proceedings in which, and for which, fees are sought, paragraph (1)(b) pertains to the objective reasonableness of the positions advanced in those proceedings themselves. Consequently, here, the proper focus under paragraph (1)(b) is on the objective reasonableness of the positions that husband (and wife) took with respect to wife's motion to modify[10]—and not, as the trial court assumed, on husband's conduct that precipitated the filing of that motion.

---

[10] *See* 206 Or App at 407-08 (describing parties' positions regarding wife's modification motion).

Because "objective reasonableness" is a legal, and not a factual, determination, *see, e.g., Secor Investments, LLC,* 188 Or App at 175, we can, as a prudential matter, either remand to the trial court to reconsider its erroneous application of paragraph (1)(b) or we can make that determination in the first instance. For reasons of judicial comity, we elect the former approach. Even if we were to engage in an assessment of the objective reasonableness of the parties' various contentions, we would still be obligated to remand so that the trial court could, upon reconsideration, again exercise the discretion that is committed to trial courts under ORS 20.075(1). Because the determination of fee entitlement must be remanded in all events, the trial court should have the first opportunity to address the proper application of ORS 20.075(1)(b) in this case.

The same reasoning applies to the trial court's reliance on the "objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings[,]" ORS 20.075(1)(e), and the "objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute[,]" ORS 20.075(1)(f). Again, those factors pertain to the parties' conduct during the operative proceedings (*viz.,* the modification proceedings) and not to conduct precipitating those proceedings. Again, in invoking those factors as militating in favor of a discretionary award of fees to wife, the trial court appears to have relied exclusively on husband's conduct that gave rise to the proceedings. Accordingly, we remand for the trial court, consistently with this opinion, to reconsider its application of those factors.

In sum, the trial court properly applied ORS 20.075(1)(a), but its application of paragraphs (1)(b), (1)(e), and (1)(f) was based on an erroneous understanding of the scope and content of those factors. Accordingly, we remand for the court to reconsider its application of those factors and, upon that reconsideration, to again exercise its discretion under ORS 20.075(1). *Cf. Mantia v. Hanson,* 190 Or App 412, 431, 79 P3d 404 (2003) ("Because the trial court exercised its discretion under ORS 20.190(3) based, in part, on a criterion that we have now determined was inapposite, we remand for the trial court to again exercise its discretion in light of our determination * * *."). For the same reasons, we vacate and

remand for reconsideration the trial court's denial of husband's petition for attorney fees.[11]

■    We turn, finally, to the trial court's award of attorney fees against grandmother. That award was predicated on ORS 109.119(7), which provides:

"In a proceeding under this section [allowing a paternal grandparent to intervene and seek visitation rights], the court *may*:

"* * * * *

"(b)   Assess against a party reasonable attorney fees and costs for the benefit of another party."[12]

(Emphasis added.)

As noted, 206 Or App at 414, the trial court determined that grandmother had not engaged in unreasonable, contumacious, or bad faith conduct.[13] Nevertheless, the court ordered grandmother to pay a portion of wife's fees solely because she had aligned herself with husband, thereby increasing wife's expenses. The trial court erred in that regard. *State ex rel Aspen Group v. Washington County*, 166 Or App 217, 996 P2d 1032 (2000).

In *State ex rel Aspen Group*, a realtor sought mandamus pursuant to ORS 215.428(7) to compel a county's approval under ORS 215.428(1) of a land use application. *See* 166 Or App at 219. The county "did not actively participate in the action and effectively conceded the relief sought[,]" *id.* at 219, but an intervenor was allowed to appear in opposition to the application. When the realtor received a favorable judgment against the county, the trial court ordered the intervenor to pay attorney fees pursuant to ORS 34.210.[14] Because

---

[11] Our analysis and disposition obviates any discussion of husband's assignment of error disputing the amount of fees awarded to wife.

[12] ORS 109.003 provides:

"In any proceeding brought under this chapter, an authorization of attorney fees to a party also authorizes an award of attorney fees to or against any person who has appeared or intervened in the proceeding."

[13] In pursuing intervention, grandmother took a course of action specifically authorized by statute. ORS 109.119. In addition, when it initially decided to allow grandmother to intervene, the trial court recognized that her participation would substantially overlap with husband's.

[14] ORS 34.210 provides that "[i]f the court orders issuance of a peremptory writ of mandamus * * * [t]he court in its discretion may designate a prevailing party and award attorney fees * * * to the prevailing party[.]"

an award of fees under ORS 34.210 is discretionary, the trial court applied ORS 20.075(1), including ORS 20.075(1)(a). *See State ex rel Aspen Group v. Washington County,* 150 Or App 371, 946 P2d 347 (1997), *rev den,* 327 Or 82 (1998) (remanding for trial court to apply ORS 20.075(1)).

We reversed the award of fees against the intervenor. In so holding, we concluded that the county's conduct in failing to timely act on the application—and not the subsequent intervention—"gave rise to the litigation." Consequently, ORS 20.075(1)(a) could not support an attorney fee award against the intervenor, regardless of whether the intervenor's participation increased the parties' expenses. *State ex rel Aspen Group,* 166 Or App at 222-23. We went on to conclude that, absent some finding of "meritlessness or unreasonableness" on the part of the intervenor, a fee award against her was improper. *Id.* at 226.

The same reasoning applies here.[15] Husband's conduct—not grandmother's intervention—gave rise to the modification proceedings. Grandmother's participation came about only after wife and husband had made motions to modify. Grandmother's participation was reasonable throughout; she did not assert objectively unreasonable claims or defenses. Although it may be that grandmother's objectively reasonable conduct increased wife's litigation expenses, that consideration cannot, by itself, justify a discretionary award of attorney fees. *See State ex rel Aspen Group,* 166 Or App at 222-26. Accordingly, the trial court abused its discretion in awarding wife fees against grandmother. *See id.* at 227.

Supplemental judgment reversed as to allowance of attorney fees payable by intervenor; otherwise vacated and remanded for reconsideration.

---

[15] Although the asserted entitlement to attorney fees here is based on ORS 109.119(7)(b) and not, as in *State ex rel Aspen Group,* ORS 34.210, the ultimate exercise of discretion in awarding fees against intervenors in both cases was solely predicated on the application of ORS 20.075(1)(a). Consequently, *State ex rel Aspen Group* is directly analogous.